IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

WATERMARK SENIOR LIVING RETIREMENT COMMUNITIES, INC.,

Plaintiff,

vs.

MORRISON MANAGEMENT SPECIALISTS, INC.,

Defendant.

Case No.:

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1446, Defendant Morrison Management Specialists, Inc., ("Defendant"), files this Notice of Removal to remove this civil action from the Circuit Court for the County of Oakland, State of Michigan, wherein it was filed as Case No. 2017-158904-CK, to the United States District Court for the Eastern District of Michigan, and shows unto this Honorable Court as follows:

1. On or about May 23, 2017, Plaintiff filed a Complaint ("Complaint") in the Circuit Court for the County of Oakland, State of Michigan, in the civil action styled *Watermark Senior Living Retirement Communities, Inc., v. Morrison Management Specialists, Inc.,* Case No. 2017-158904-CK. A true and correct copy of all process and pleadings served upon Defendant are attached hereto as Exhibit A and is incorporated herein by reference.

2. Defendant was served with a copy of the referenced Complaint via certified mail on May 26, 2017.

3. This action could have been originally filed in this Court pursuant to 28

U.S.C. §§ 1332 and 1367, in that there is complete diversity between Plaintiff and Defendant and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. This Notice of Removal is filed within thirty (30) days after receipt by Defendant of the initial pleading on which the aforesaid action is based pursuant to Rule 6(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1446(b).

**DIVERSITY OF CITIZENSHIP**

5. Complete diversity of citizenship exists between the parties; Plaintiff is domiciled in Tucson, Arizona. Thus, Plaintiff's citizenship for purposes of diversity jurisdiction is Arizona. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

6. Defendant Morrison Management Specialists, Inc., is a Georgia corporation with a principal place of business in Georgia. Therefore, for purposes of diversity jurisdiction, this Defendant is a citizen of Georgia. *Id.*

7. Accordingly, complete diversity of citizenship exists.

**THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

8. Plaintiff claims Defendant Morrison breached its contractual obligations to Plaintiff related to an underlying personal injury and wrongful death claim brought against Plaintiff, and Plaintiff alleges that it is entitled to "full contractual indemnification from Defendant Morrison" in the amount of $3,650,000.00 plus costs and attorney's fees. Exhibit A, Pl.'s Compl. at ¶¶ 15 and 18.

9. Plaintiff's claims are sufficient for purposes of the amount in controversy requirement and have put Defendant on notice that this case is removable.

10. Thus, Plaintiff's underlying action claims for damages exceed $75,000.00, the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

11. As required by 28 U.S.C. § 1446(a), attached are copies of all pleadings and orders in possession of Defendant in the removed action. A true and correct copy of the Complaint as served on Defendant is attached as Exhibit A.

12. Exhibit A constitutes all the papers and pleadings received by Defendant to date. 28 U.S.C. § 1446(a).

13. This Notice of Removal is filed pursuant to 28 U.S.C. § 1441 and within the time prescribed by 28 U.S.C. § 1446.

14. This notice of removal is timely in that the requirements for diversity are met and it is brought within the time period required for removal under 28 U.S.C. § 1441 and Fed. R. Civ. P. 6(a)(1)(C). In addition, the notice of removal is timely in that it was filed within one year of the filing of Plaintiff's Complaint as required by 28 U.S.C. §1441(b).

**THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

15. A copy of this Notice of Removal is being filed with the Clerk of the Circuit Court for the County of Oakland, State of Michigan, and written notice is being sent to Plaintiff's counsel, as required by 28 U.S.C. §1441(d).

16. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

17. The allegations of this Notice are true and correct and within the jurisdiction of the United States District Court for the Eastern District of Michigan, and this cause is removable to the United States District Court for the Eastern District of Michigan per Rule 18.

18. If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, Defendant Morrison Management Specialists, Inc., desiring to remove this case to the United States District Court for the Eastern District of Michigan, being the district and division of said Court for the County in which said action is pending, prays that the filing of this Notice of Removal shall effect the removal of said suit to this Court.

Dated: June 14, 2017

Respectfully submitted,

/s/ Marcus R. Sanborn

Marcus R. Sanborn
BLEVINS SANBORN JEZDIMIR ZACK PLC
1842 Michigan Ave.
Detroit, Michigan 48216
Phone: (313) 338-9500
Email: msanborn@bsjzlaw.com

*Attorneys for Defendant Morrison Management Specialists, Inc.*

**CERTIFICATE OF SERVICE**

A copy of the foregoing was served via email and U.S. Mail on the 14th day of June, 2017, with notification to:

Jonathan M. Jaffa (P23717)
Ronald S. Lederman (P38199)
SULLIVAN, WARD, ASHER & PATTON, P.C.
Attorneys for Plaintiff
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-8412
Phone: (248) 746-0700
Fax: (248) 746-2760
Email: jjaffa@swappc.com
rlederman@swappc.com

*Attorney for Plaintiff*

/s/ Marcus R. Sanborn
*Attorney for Defendant Morrison Management Specialists,, Inc.*

# Exhibit A



null / ALL
**Transmittal Number: 16691790**
**Date Processed: 05/26/2017**

# Notice of Service of Process

**Primary Contact:** Cynthia Jones
Compass Group North America
2400 Yorkmont Road
Charlotte , NC 28217

| | |
|---|---|
| **Entity:** | Morrison Management Specialists, Inc.<br>Entity ID Number 3290399 |
| **Entity Served:** | Morrison Management Specialists, Inc. |
| **Title of Action:** | Watermark Senior Living Retirement Communities, Inc. vs. Morrison Management Specialists, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Oakland County Circuit Court, Michigan |
| **Case/Reference No:** | 2017-158904-CK |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 05/26/2017 |
| **Answer or Appearance Due:** | 28 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Ronald S. Lederman<br>248-746-0700 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscglobal.com

SULLIVAN, WARD, ASHER & PATTON, P.C.

ATTORNEYS AND COUNSELORS AT LAW

1000 MACCABEES CENTER
25800 NORTHWESTERN HIGHWAY
SOUTHFIELD, MICHIGAN 48075-8412

TELEPHONE: (248) 746-0700
FAX: (248) 746-2760

WEB SITE: www.swappc.com

**1951 • Celebrating 65 Years • 2016**

ROBERT E. SULLIVAN, SR. (1922-1998)
DAVID M. TYLER (1930-2002)
RICHARD G. WARD (1929-2015)

RONALD S. LEDERMAN
rlederman@swappc.com
(248) 746-2705

May 24, 2017

***Via Certified Mail***
***7015 1520 0001 1677 0016***

Morrison Management Specialists, Inc.
CSC-Lawyers Incorporating Service
601 Abbot Road
East Lansing, 48823

**RE: Watermark Senior Living Retirement Communities, Inc. v Morrison Management Specialists, Inc.**

To Whom it May Concern:

Enclosed please find a Summons and Complaint in the above mentioned matter. Upon receipt, please sign the Acknowledgment of Service and return same to my office.

Very truly yours,

SULLIVAN, WARD
ASHER & PATTON, P.C.

Ronald S. Lederman

RSL/dar
Encl.
W1998809.DOCX



Received for Filing Oakland County Clerk 5/23/2017 2:50 PM

This case has been designated as an eFiling case. To review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/Pages/efiling.

Approved, SCAO — Original - Court — 2nd copy - Plaintiff — Return

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>6th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>2017-158904 -CK |
|---|---|---|

Court address: 1200 N. Telegraph Rd., Dept. 404, Pontiac 48341-0404

Court telephone no.: (248) 858-1000

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Watermark Senior Living Retirement Communities, Inc. | v | Morrison Management Specialists, Inc.<br>CSC-Lawyers Incorporating Service<br>601 Abbot Road<br>East Lansing, MI 48823 |
| Plaintiff's attorney, bar no., address, and telephone no.<br>Jonathan M. Jaffa (P23717) Ronald S. Lederman (P38199)<br>Sullivan, Ward, Asher & Patton, P.C.<br>1000 Maccabees Center<br>25800 Northwestern Hwy.<br>Southfield, MI 48075-8412 (248)746-0700 | | |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires | Court clerk |
|---|---|---|
| 5/23/2017 | 8/22/2017 | Lisa Brown |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** ***Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.***

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in ____________________ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in Oakland County Court.

The action ☐ remains ☑ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| 2013-133793-NH | Hala Jarbou | P55039 |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Oakland County, State of Michigan | Georgia corporation doing business in Oakland County |
| Place where action arose or business conducted<br>Oakland County, State of Michigan | |

05/23/2017
Date

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

**SUMMONS AND COMPLAINT**
Case No.

**PROOF OF SERVICE**

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

☐ **OFFICER CERTIFICATE**
I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required)

**OR**

☐ **AFFIDAVIT OF PROCESS SERVER**
Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required)

☐ I served personally a copy of the summons and complaint,
☑ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with Summons and Complaint with Exhibit
List all documents served with the Summons and Complaint

______________________________________________ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| Morrison Management Specialists, Inc. CSC-Lawyers Incorporating Services | 601 Abbot Road, East Lansing, MI 48823 | 5/24/17 |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

Signature

Name (type or print)

Title

Subscribed and sworn to before me on ______________ (Date), ______________ County, Michigan.

My commission expires: ______________ (Date) Signature: ______________ Deputy court clerk/Notary public

Notary public, State of Michigan, County of ______________

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with ______________ (Attachments)

______________ on ______________ (Day, date, time)

______________ on behalf of ______________.
Signature

This case has been designated as an eFiling case. To review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/Pages/efiling.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

WATERMARK SENIOR LIVING RETIREMENT COMMUNITIES, INC.,

Plaintiff,

-vs-

MORRISON MANAGEMENT SPECIALISTS, INC.

Defendant.

2017-158904-CK

Case No. -CK

JUDGE CHERYL MATTHEWS

JONATHAN M. JAFFA (P23717)
RONALD S. LEDERMAN (P38199)
SULLIVAN, WARD, ASHER & PATTON, P.C.
Attorneys for Plaintiff
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-8412
(248) 746-0700 / Fax: (248) 746-2760

SULLIVAN, WARD, ASHER & PATTON, P.C.

**COMPLAINT**

There is one other pending or resolved civil action arising out of the same transaction or occurrence as alleged in this Complaint. Case No. 2013-133793-NH, assigned to Hon. Hala Jarbou BD

/s/ Ronald S. Lederman

NOW COMES the Plaintiff, **WATERMARK SENIOR LIVING RETIREMENT COMMUNITIES, INC.**, by and through its attorneys, SULLIVAN, WARD, ASHER & PATTON, P.C., and for its Complaint against Defendant **MORRISON MANAGEMENT SPECIALISTS, INC.**, states:

Received for Filing Oakland County Clerk 5/23/2017 12:50 PM

1. Watermark Senior Living Retirement Communities, Inc. ("Watermark") is an Arizona corporation and conducts business in the County of Oakland, State of Michigan.

2. Defendant Morrison Management Specialists, Inc. ("Morrison") is a Georgia corporation and does business in the County of Oakland, State of Michigan.

3. The amount in controversy of the within matter exceeds the sum of Twenty-Five Thousand Dollars ($25,000.00) exclusive of interest, costs and/or attorney fees and is otherwise within the jurisdiction of this Honorable Court.

4. Plaintiff Watermark was the Defendant in a negligence action filed in the Circuit Court for the County of Oakland by Roosevelt Henderson, as Personal Representative of the Estate of Willie Mae Henderson, Case No. 2013-133793-NH. ("the Henderson action").

5. It was alleged in the Henderson action that Watermark was negligent in its operation of the kitchen in the memory care unit of The Fountains of Franklin, a senior citizens living facility where Willie Mae Henderson resided.

6. More specifically, it was alleged the cabinet door under the sink in the kitchen which contained toxic dish washing detergent was left unlocked.

7. It is further alleged in the Henderson action that, as a result of such negligence, Willie Mae Henderson accessed the cabinet, drank the toxic dishwashing detergent and subsequently died.

8. At the time of the incident in question, Defendant Morrison was contractually responsible for all kitchen operations at The Fountains of Franklin facility, and had the responsibility for keeping the cabinet door in question locked when not in use.



SULLIVAN, WARD, ASHER & PATTON, P.C.

Received for Filing Oakland County Clerk 5/23/2017 12:50 PM

Received for Filing Oakland County Clerk 5/23/2017 12:50 PM

SULLIVAN, WARD, ASHER & PATTON, P.C.

**COUNT I**

**CONTRACTUAL INDEMNIFICATION**

9. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 8 as though specifically and fully set forth herein.

10. At the time of the incident in question, Defendant Morrison was contractually responsible for all kitchen operations at The Fountains at Franklin. (See: EXHIBIT A, Confidential and Proprietary Agreement).

11. Two Morrison employees were the last individuals to have access to the cabinet door immediately prior to the incident involving Mrs. Henderson.

12. The specified Confidential and Proprietary Agreement was executed between Morrison and Plaintiff's predecessor in interest, Sunrise IV Franklin SL, LLC.

13. By its terms, the Confidential and Proprietary Agreement inured to the benefit of, was binding on and enforceable by Plaintiff, as a "lawful successor" to Sunrise IV Franklin SL, LLC.

14. The Confidential and Proprietary Agreement contained the following indemnification provision in its Article 6:

> "6.3 **Indemnity.** (a) Subject to Section 6.2 and 6.4, Morrison shall indemnify, defend and hold harmless the Community and its officers, agents and employees, with respect to any and all liability, losses, claims, suits, damages, taxes, charges and demands of any kind and nature by any party which any of them may incur or suffer as a result of any cause of action relating solely to or arising solely out of any negligent act or omission of Morrison. Morrison shall not have an obligation to Indemnify Community for any liability, losses, claims, suits, damages, taxes, charges or demands of any kind or nature arising out of any intentional or negligent acts or omissions of the Community."

15. The damages sustained by the Estate of Willie Mae Henderson arose solely out of the breach of Morrison's contractual duties to safely operate and maintain the facility's kitchen.

16. Following a mediation which was intended to encompass the instant claims and in which counsel for Morrison attended, but did not meaningfully participate, the Henderson action was settled for the amount of Three Million, Six Hundred Fifty Thousand Dollars and 00/100 ($3,650,000.00).

17. Plaintiff Watermark requested but was denied full indemnification by Morrison.

18. Plaintiff Watermark is entitled to full contractual indemnification from Defendant Morrison in the amount of Three Million, Six Hundred Fifty Thousand Dollars and 00/100 ($3,650,000.00), plus all costs and attorneys' fees incurred in the Henderson action.

WHEREFORE, Plaintiff Watermark Senior Living Retirement Communities, Inc., respectfully requests that this Honorable Court enter its judgment for contractual indemnification in favor of Plaintiff and against Defendant Morrison Management Specialists, Inc., plus all costs and attorneys' fees.

**COUNT II**

**BREACH OF CONTRACT**

19. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 18 above as though specifically and fully set forth herein.

20. Defendant Morrison was contractually obligated to provide all kitchen and dining room services at The Fountains at Franklin, which included, by law, the



SULLIVAN, WARD, ASHER & PATTON, P.C.

Received for Filing Oakland County Clerk 5/23/2017 12:50 PM

Received for Filing Oakland County Clerk 5/23/2017 12:50 PM

SULLIVAN, WARD, ASHER & PATTON, P.C.

obligation to use ordinary care to maintain the Memory Care Unit's kitchen area in a reasonably safe condition.

21. Defendant Morrison breached its contractual obligations to Plaintiff by failing to lock the door to the cabinet under the kitchen sink after using it immediately prior to the incident involving Mrs. Henderson.

22. As a result of a breach of Morrison's contractual obligations, the subject door was kept unlocked and fully accessible to Willie Mae Henderson, who gained access into the cabinet and drank toxic dishwashing detergent contained therein.

23. In the Henderson action, Plaintiff Watermark paid the amount of Three Million, Six Hundred Fifty Thousand Dollars and 00/100 ("$3,650,000.00") for a full settlement of the action as a result of Defendant Morrison's breach of contract.

WHEREFORE, Plaintiff Watermark Senior Living Retirement Communities, Inc., respectfully requests that this Honorable Court enter its judgment for breach of contract in favor of Plaintiff and against Defendant Morrison Management Specialists, Inc. for the amount of $3,650,000.00, plus all costs, interest, and attorneys' fees.

Respectfully submitted,

SULLIVAN, WARD,
ASHER & PATTON, P.C.

By: /s/ Ronald S. Lederman
JONATHAN M. JAFFA (P23717)
RONALD S. LEDERMAN (P38199)
Attorney for Plaintiff
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-8412
(248) 746-0700
jjaffa@swappc.com

Received for Filing Oakland County Clerk 5/23/2017 12:50 PM

SULLIVAN, WARD, ASHER & PATTON, P.C.

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, Watermark Senior Living Retirement Communities, Inc., by and through its attorneys, SULLIVAN, WARD, ASHER & PATTON, P.C., and hereby requests a trial by jury of the issues of this cause of action.

Respectfully submitted,

**SULLIVAN, WARD,**
**ASHER & PATTON, P.C.**

By: */s/ Ronald S. Lederman*

JONATHAN M. JAFFA (P23717)
RONALD S. LEDERMAN (P38199)
Attorney for Plaintiff
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-8412
(248) 746-0700
jjaffa@swappc.com

W1974658.DOC

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

SULLIVAN, WARD, ASHER & PATTON, P.C.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

WATERMARK SENIOR LIVING RETIREMENT COMMUNITIES, INC.,

Plaintiff,

-vs-

MORRISON MANAGEMENT SPECIALISTS, INC.

Defendant.

Case No. 2017-158904-CK
Hon. Cheryl A. Matthews

JONATHAN M. JAFFA (P23717)
RONALD S. LEDERMAN (P38199)
SULLIVAN, WARD, ASHER & PATTON, P.C.
Attorneys for Plaintiff
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-8412
(248) 746-0700 / Fax: (248) 746-2760

**EXHIBIT A TO COMPLAINT**

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

***CONFIDENTIAL & PROPRIETARY***

**AGREEMENT**

THIS AGREEMENT (the "Agreement") is made effective as of May 1, 2007, (the "Effective Date") between SUNRISE IV FRANKLIN SL, LLC located at 28301 Franklin Road, Southfield, Michigan 48034 (the "Community") a Michigan limited liability corporation with offices at 1700 Bronson Way, Kalamazoo, Michigan 49009, and MORRISON MANAGEMENT SPECIALISTS, INC. a Georgia corporation ("Morrison"), with offices located at 5801 Peachtree Dunwoody Road, Atlanta, Georgia 30342.

The Community desires to outsource the operation and management of the Community's Dietary Services to Morrison in accordance with the terms and conditions of this Agreement. In consideration of the premises and covenants herein, the parties mutually agree as follows:

**ARTICLE 1 - DIETARY SERVICES**

1.1 **Engagement.** (a) Subject to the terms of this Agreement, Morrison agrees to implement Morrison's dining service program (the "Program") and be responsible for the operation and management of the dining services department (the "Department") at the Community (the "Dietary Services"). This Agreement addresses all Dietary Services at the Community, including the purchase of meals by Assisted Living Residents directly from Morrison (as further defined and provided for herein) and management of all Dietary Services and preparation of meals for Other Residents that are billed by, and payable to, the Community as part of the package of services by the Community to such residents.

(b) The Program offered by Morrison will include a Monthly Meal Plan that is developed by Morrison for Assisted Living Residents to purchase meals from Morrison. The Monthly Meal Plan shall include breakfast, lunch and dinner. Breakfast, lunch and dinner will be plated and served by Morrison's wait staff.

(c) Morrison will also offer meals to guests of Assisted Living Residents and Other Residents and provide catering services to support Community operations as provided herein.

(d) Morrison shall offer menu items that address dietary needs of all Residents.

1.2 **Personnel.** (a) Morrison will furnish all personnel reasonably necessary to provide the Dietary Services.

(b) Morrison will furnish salaried personnel, (the "Salaried Personnel"), excluding dietitians, to provide the Dietary Services on-site at the Facility. The Community may request removal of any Morrison Salaried Personnel and Morrison will comply, provided such request is lawful, reasonably justified in writing, and Morrison is first given an opportunity to respond and address such issues consistent with this Agreement.

(c) Morrison shall pay the Salaried Personnel and bill Community for salaries and costs of the Management Personnel, including Morrison's Salaried Percentage Rate which will initially be established at 35.5%. The Salaried Percentage Rate shall increase to 36.5% on June 1, 2007. Thereafter, Morrison's applicable Salaried Percentage Rate shall be subject to increase on June 1 of each subsequent year in accordance with paragraph 11.10.

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

*CONFIDENTIAL & PROPRIETARY*

(d) Morrison will furnish the hourly personnel ("Hourly Personnel") in the Department. Morrison shall pay the Hourly Personnel and bill Community for the wages and costs of the Hourly Personnel, including Morrison's Hourly Percentage Rate which will initially be established at 35.5%. The Hourly Percentage Rate shall increase to 36.5% on June 1, 2007. Thereafter, Morrison's applicable Hourly Percentage Rate shall be subject to increase on June 1 of each subsequent year in accordance with paragraph 11.10.

(e) The Salaried Personnel and Hourly Personnel may at times be collectively referred to as the "Personnel".

(f) The Community will be responsible for providing dietitians for the Program and the Department.

**1.3 Purchasing.** (a) Responsibilities for paying vendors directly for the following items are indicated below (M = Morrison; C = Community). Purchases by Morrison will be charged to the Community in accordance with Article 2 of this Agreement.

| | Morrison Senior Dining | Community |
|---|---|---|
| Food | M | |
| Office supplies/stationery | M | |
| In-service training materials/supplies | M | |
| Telephone service | | C |
| Telephone long distance | | C |
| Laundry | M | |
| Cleaning/dishwashing supplies | M | |
| Menu paper and print | | C |
| Copying | | C |
| Kitchen paper/plastic | M | |
| Marketing/merchandising materials for operation | M | |
| Resident education materials/guides | M | |
| Food Service business license | M | |
| Other business licenses and permits | | C |
| Computer hardware/printer paper | M | |
| Computer software | M | |
| Computer related charges | M | |
| Morrison's CHAT charges | M | |
| Training Materials | M | |
| Morrison's Pcard expenses | M | |
| Utilities | | C |
| Pest control | | C |
| Employee physicals, background checks and testing | | C |
| Garbage/trash removal | | C |
| Service contracts (on-going) | | C |
| Repairs - purchased services (as occurs) | | C |
| Rented/leased equipment | | C |
| Smallwares replacement | M | |
| Tablewares replacement | M | |
| Minor equipment replacement (less than $500) | | C |
| Major equipment replacement ($500 or more) | | C |
| Postage | M | |
| Uniforms | M | |
| Armored car service | | C |
| Parking | | C |

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

***CONFIDENTIAL & PROPRIETARY***

(b) Until full reimbursement, title to the above items shall remain with the party who pays the vendor directly. In the event Morrison purchases any of the above items, Morrison shall pay the vendor directly for such items, and the cost of such items shall be charged to the Community on Morrison's next billing. Notwithstanding anything to the contrary, all computer software furnished by or through Morrison, as well as any of Morrison's Proprietary Information, shall remain the property of Morrison (even if fully depreciated). Community will provide high speed/broadband internet access to Morrison in the Department at no cost to Morrison.

(c) Morrison's Management Personnel will determine the specifications for and order food and other supplies to be used in the Program and Department. Morrison is entitled to utilize its national account or other vendor systems and the Community will receive the same price savings as Morrison's other clients. If vendors extend to Morrison any credits or discounts which are exclusively related to the Community's operation of the Department, such credits or discounts shall be passed on to the Community. If vendors extend to Morrison any company-wide credits, fees or discounts, including, without limitation, any early payment discounts, administrative fees or volume discounts, Morrison will be entitled to retain such credits, fees or discounts.

1.4 **Community Facilities.** (a) The Community will furnish a Facility that is equipped and furnished to the reasonable satisfaction of Morrison and the Community. Morrison shall have an exclusive license to occupy and use the Facility's kitchen and dining facilities so that Morrison can provide the Dietary Services. The Community will maintain the Facility and all items furnished by the Community (the "Property") in accordance with Applicable Law, and make all repairs or replacements to the Facility and Property at its expense, except that Morrison shall be responsible for damage to the same caused by the gross negligence of Morrison's employees (other than as provided in Section 6.4). The Community shall retain all property rights and interests in and to the Facility and the Property.

(b) Cleaning responsibilities will be as follows (M = responsibility of Program managed by Morrison; C = responsibility of Community, not Morrison managed):

| | Morrison Senior Dining | Community |
|---|---|---|
| Kitchen | | |
| Floors | M | |
| Walls | M | |
| Equipment | M | |
| Refrigerators and freezers | M | |
| Vents | | C |
| Ceiling | | C |
| Duct work | | C |
| Light replacement | | C |
| Storage Areas for Program | | |
| Floors | M | |
| Walls | M | |
| Ceiling | | C |
| Shelving | M | |
| Dining Area | | |
| Furniture | M | |
| Equipment | M | |
| Floors/carpet | | C |
| Windows/walls | | C |
| Ceiling | | C |
| Drapery | | C |

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

*CONFIDENTIAL & PROPRIETARY*

Floor Stations
- Equipment.......... C
- Floors.......... C
- Walls/ceilings.......... C

Receiving Area for Program
- Pick-up/spot mop.......... M
- Daily cleaning.......... M

(c) With regard to all cafe' and dining related areas, Morrison will be responsible for cleaning the non-public/non-customer portion of the areas assigned to it where Morrison's employees work and the Community will be responsible for cleaning and maintenance of the other areas and portions, such as where there is public or customer access/use.

1.5 **Inventories.** (a) The Community will provide and maintain a fully adequate inventory and supply of Tablewares and Smallwares for satisfactory operating requirements, in Morrison's opinion, at the Community's expense. The parties understand that Tablewares and Smallwares requirements may vary due to changes in service. If Morrison furnishes Tablewares or Smallwares, it will bill the Community for the same, including for loss and breakage based on inventories conducted by Morrison from time-to-time.

(b) Each party will retain ownership of the items they provide, until full reimbursement/payment of all amounts under this Agreement.

1.6 **Meetings & Resident Satisfaction Survey.** In order to improve communication and effectiveness, the parties agree to meet at mutually agreeable times and places to discuss performance and expectations under this Agreement. This includes having expectation meeting(s) at least annually, with participation by appropriate senior management of each party who have decision making authority. Meetings shall also address any resident satisfaction issues with respect to Morrison's Dietary Services that are received by Morrison or the Community since the previous meeting. In addition, Community agrees to allow Morrison to survey the Facility once per year utilizing its then current resident satisfaction tool (at execution of this Agreement, a Press Ganey survey) which will assist Morrison in evaluation of its performance and in establishing procedures and goals for improvement of service to the Community. Morrison shall be responsible for resolving any issues or concerns raised by residents with respect to the Dietary Services furnished by Morrison. Nothing in this paragraph 1.6 or this Agreement shall preclude the Community from conducting its own quality improvement activities related to Facility operations, including its own independent assessment of resident satisfaction with Morrison's Dietary Services.

1.7 **Food Purchasing Payment.** (a) Morrison agrees to pay the Community an amount up to five percent (5%) of the net cost of the total food purchases made by Morrison in connection with the Dietary Services at the Community on a quarterly basis. Subject to paragraph 1.7(e), the amount of the quarterly food purchasing payment earned by the Community shall be based on the following formula: (i) if the combined food purchases from the preferred vendors identified on Morrison's Preferred Supplier Report for the Community during the applicable quarter compared to total food purchasing for the Community during the applicable quarter is 95.0% or greater, then the amount of the food purchasing payment for the Community will be five percent (5%) of the net cost of the food purchases made by Morrison in connection with the Dietary Services at the Community during that quarter.

(b) Morrison will not be required to provide a food purchasing payment to the Community if the Community's acts or omissions cause the percentage amount of the Community's purchases from

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

***CONFIDENTIAL & PROPRIETARY***

Morrison's preferred suppliers (as identified on Morrison's Preferred Supplier Report for the Community) is less than ninety five percent (95%). Morrison will still be required to provide a food purchasing payment to the Community if purchasing compliance is less than ninety five percent (95%) for reasons other than the Client's acts or omissions.

(c) For purpose of this Agreement, the term "net cost" shall mean and refer to gross cost of food less the following: (1) applicable sales and use taxes; (2) applicable fuel surcharges; and (3) applicable delivery charges. The Community's right to receive food purchasing payments from Morrison shall cease upon termination or expiration of this Agreement.

(d) If this Agreement is terminated prior to the end of a quarter, then Morrison will not be required to provide any food purchasing payment for the quarter during which the termination became effective.

(e) All food purchasing payments shall be due and payable within 30 days of the end of each quarter during the remaining Term of this Agreement.

(f) In accordance with Section 1128B(b)(3)(A) of the Social Security Act, the Community acknowledges and agrees that, depending upon how the Community receives payment for items and services furnished, it may have an obligation to report these food purchasing payments as a discount or rebate in accordance with this provision of the Social Security Act, including any regulations adopted pursuant thereto.

(g) A "quarter" for the purpose of this paragraph will mean the initial three (3) month period from May, 2007 through July, 2007 and then each subsequent three (3) month period thereafter.

## ARTICLE 2 - COMPENSATION

2.1 **Billing.** (a) The Community will pay Morrison for the Dietary Services in accordance with invoices and monthly billings submitted by Morrison, which will reflect amounts due and adjustments from prior billings. Payments are due within fourteen (14) days of billing and shall be paid by electronic transfer of funds on or before the 14th day to a bank account designated by Morrison in Morrison's name; any sums unpaid thereafter shall bear interest at the lesser of one and one-half (1½%) percent per month or the highest rate permitted under Applicable Law, accruing from the date of billing to the date of payment.

(b) Morrison's invoices to the Community will include all costs that Morrison incurs in connection with the Dietary Services, including, food, supplies and labor for all resident meals and Morrison's standard charges (e.g. CHAT charges, computer charges, etc.).

(c) On the first day of each month Morrison will bill the Community in advance $133,174, which amount represents the projected costs to be incurred by Morrison for the month being billed (the "Pre-Bill Invoice"). The amount of the Pre-Bill Invoice will be adjusted on June 1 of each year that this Agreement is in effect to reflect changes in Department costs.

(c) After the close of each month Morrison will issue a Reconciliation Invoice (generally on the tenth (10th) of each month) which will identify the actual costs incurred by Morrison in connection with the Dietary Services for the month that has closed along with any other charges that Morrison is entitled to make under the terms of this Agreement. Any amounts paid by the Community pursuant to the Pre-Bill Invoice will be credited toward the appropriate Reconciliation Invoice. If the Reconciliation



[illegible]

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM



Invoice identifies a charge that is owed by the Community (i.e., the actual costs for the month exceeded the amount of the Pre-Bill Invoice), then the Community will pay that charge in accordance with paragraph 2.1(a). If the Reconciliation Invoice identifies a credit to the Community, then the credit will be applied to Morrison's next Reconciliation Invoice.

(d) A sample bill is attached hereto as Exhibit B for informational purposes only. In the event of a conflict between the terms of this Agreement and the sample bill, the terms of this Agreement will control.

2.2 **Initial Payment.** Morrison previously received an initial payment of $29,278 in connection with a previous food service agreement for services at the Facility. Upon termination of this Agreement, the amount of Morrison's final billing to the Community will be adjusted to reflect this previous initial payment (which is non-interest bearing).

2.3 **Combined General and Administrative Charge and Management Fee.** The Community further agrees to pay Morrison as follows:

(a) Morrison shall be allowed to charge and receive $48,328 annually as a combined general and administrative charge and management fee, all payable in equal monthly installments.

(b) The charges outlined above shall be increased by a percentage corresponding to the increase in the CPI (if any) on each anniversary of the Effective Date.

(c) The Community shall bear all costs and any losses in connection with the operation, including but not limited to payroll costs, Morrison's fees and charges, general liability and all other insurance and all food, supply and other standard costs. Nothing contained in this Agreement shall be construed as a representation or guarantee by Morrison that any financial, budgetary, performance or other goals will be met.

2.4 **Assisted Living Monthly Meal Plan Rate.** (a) Morrison's Initial Monthly Meal Plan Rate charge to Assisted Living Residents will be $216.02 per month (which amount is based on a monthly Meal Plan Rate of $203.79 plus six percent (6%) for Michigan sales taxes). The Monthly Meal Plan Rate for Assisted Living Residents will consist of three (3) meals per day (a breakfast, lunch and dinner meal). The Morrison Monthly Meal Plan Rate for assisted living meals includes the cost of food and supplies to provide these meals to assisted living residents.

(b) Morrison's invoices to the Community will include the cost of food and supplies for all resident meals, including meals for Assisted Living Residents, because it is impractical for Morrison to try to segregate the purchase of food and supplies for Assisted Living Residents from the purchase of food and supplies for Other Resident meals.

(c) The Community agrees to act as a billing agent for Morrison with respect to meals purchased by Assisted Living Residents. The Community will include a charge on its invoices to Assisted Living Residents for the cost of Morrison's meal services based on Morrison's applicable Monthly Meal Plan Rate plus applicable sales taxes. The Community then will remit the funds received by the Community from Assisted Living Residents for the Monthly Meal Plan Rate. Morrison will then provide a credit on Morrison's next invoice to the Community for the funds it receives from the Community (since Morrison is remitting sales taxes, the amount of the credit will be net of applicable sales taxes). Morrison will not provide any credits to the Community for meals purchased by Assisted

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM



Living Residents prior to the receipt of the funds from the Community that pay for Assisted Living Resident Monthly Meal Plans.

(d) The cost of a monthly meal plan will be prorated in the event that an Assisted Living Resident starts participating in a meal plan after the start of a month or if an Assisted Living Resident ceases participation prior to the end of the month. If an Assisted Living Resident ceases participation prior to the end of the month, then the Community will only remit to Morrison a prorated portion of the applicable Monthly Meal Plan Rate for that month (and the Community will be responsible for refunding the remaining, unused portion of the Monthly Meal Plan Rate funds back to the Assisted Living Resident).

(e) The cost of the Morrison Monthly Meal Plan Rate will be renegotiated as mutually agreed upon by the parties on each anniversary of the Effective Date.

2.5 **Cash Received.** Any cash sales received from the Program by Morrison will be delivered to the Community's business office.

2.6 **Transition Billing.** (a) Morrison previously provided food and nutrition services to the Community pursuant to a previous food service agreement (the "Previous Agreement") under terms that differ from the terms of this Agreement. By way of example, and not limitation, under the terms of the Previous Agreement the Community, not Morrison, paid for the food used by the Department. In addition, Morrison used a different billing procedure pursuant to the terms of the Previous Agreement.

(b) During May, 2007 and June, 2007, the parties have agreed to continue following certain practices under the Previous Agreement while Morrison begins transitioning to operations under this Agreement. By way of example, but not limitation, the Community will continue to pay for the cost of food in the Department until Morrison is able to make arrangements with food service vendors to begin billing Morrison directly for the cost of Department food and supplies. In addition, Morrison will not begin to use the "Pre-Bill Invoice" procedure identified in paragraph 2.1(c) until July 1, 2007 since the parties do not anticipate that Morrison will be paying for food and supplies completely until June 30, 2007. Notwithstanding the foregoing, the amounts to be charged by Morrison to the Community and the applicable amount of the Monthly Meal Plan Rate shall be governed by the terms of this Agreement.

## ARTICLE 3 - TERM AND TERMINATION

3.1 **Term.** The initial term of this Agreement will extend from the Effective Date for three (3) years. Thereafter, this Agreement will automatically renew for successive one (1) year periods. This Agreement may be terminated:

(a) at any time by mutual written agreement;

(b) by either party without cause provided that, (1) at least an eighteen (18) month period from the Effective Date has passed and (2) the party seeking such termination provides at least ninety (90) days prior written notice to the other party;

(c) by Morrison upon fifteen (15) days prior written notice if the Community fails to pay any amounts due within thirty (30) days from the date of Morrison's billing; and

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM



(d) by either party for cause for the other party's failure to perform any duty or obligation under this Agreement in accordance with paragraph 3.2.

3.2 **Termination for Cause:** If Morrison is not providing Dietary Services in accordance with the requirements of this Agreement, or if Community is not performing its obligations under this Agreement (other than its obligation to pay, which is governed by paragraph 3.1(c)), and Community or Morrison (as applicable) desires to terminate this Agreement for cause, the party seeking such termination must give the other party sixty (60) days written notice of its intention to cancel this Agreement if such service or other deficiencies are not corrected within that time (the "Cure Period"), which notice shall specify the service area defaults in detail. At the end of the sixty (60) days Cure Period, the party seeking such termination shall determine that either (i) the service or other deficiencies have been corrected, in which case the contract will continue in full force and effect subsequent to the Cure Period, or (ii) the service or other deficiencies have not been corrected, in which event the party seeking termination may, by further written notice, cancel this Agreement sixty (60) days from the end of the Cure Period. In the event that the party seeking such termination does not act pursuant to either (i) or (ii) above, the service or other deficiency shall be deemed corrected and the Agreement shall continue in full force and effect thereafter.

## ARTICLE 4 - COMPLIANCE WITH LAWS

4.1 **Compliance.** Morrison and the Community agree to comply with all Applicable Laws, including federal, state and local laws, rules and regulations. Morrison certifies that its ability to provide services in any city, state, county, commonwealth or other jurisdiction has never been revoked, limited, suspended or otherwise restricted in any manner. Morrison shall procure and maintain any state or local food service licenses necessary for Morrison to provide the Dietary Services, exclusive of licenses related to the service of alcohol at the Facility, which shall be the Community's responsibility. Upon the effective date of termination of this Agreement, and upon the request of the Community, Morrison agrees to transfer any food service licenses applicable to the Dietary Services at the Facility to a successor food service provider, provided such licenses are transferable. Otherwise, Morrison shall relinquish all such licenses to the appropriate regulatory authorities.

4.2 **Regulations.** With regard to any fees, discounts, commissions, charges, donations or investments that are provided to the Community, the Community is solely responsible for any cost reporting or other compliance with state or federal agencies under Medicare/Medicaid programs, as well as any other governmental requirements, charges, liabilities or levies, and any cost reporting for amounts to the Community or Morrison under Section 1.3(c).

4.3 **Sales and Other Taxes.** The Community will be responsible and pay for all taxes, fees, assessments and licenses, including without limitation, any sales and use taxes on sales from the Community's retail facilities, liquor licenses, personal property taxes on equipment or investments provided by Morrison, taxes on operation of the Facility, any taxes imposed on Morrison's fees or other charges to the Community pursuant to this Agreement, and any of the above that result from new taxes, legislation or enforcement positions. Notwithstanding the foregoing, Morrison shall be responsible for remitting sales taxes in connection with Morrison's provision of meals to assisted living residents (see paragraph 2.4(b)(3)) and each party will be responsible for its own federal, state, or local corporate income taxes or the Michigan Single Business Tax.

4.4 **Exemptions.** The Community will be responsible for providing Morrison any applicable exemption or resale certificate(s) related to Morrison's Dietary Services for the Community.

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

*CONFIDENTIAL & PROPRIETARY*

4.5 Non-discrimination. Neither party will discriminate in any unlawful manner. Any changes necessary to the physical facility to comply with the Americans With Disabilities Act will be the Community's responsibility.

4.6 Reports. Morrison shall record promptly and maintain all information pertaining to its performance of duties under this Agreement. Morrison will provide the Community with documentation supporting Morrison's charges to the Community within five (5) business days of the Community's written request to Morrison. Each party shall make available to the other party such other data, books and records relating to the performance under the Agreement for the purpose of obtaining and verifying the information required to perform under the Agreement.

ARTICLE 5 - EMPLOYMENT RESTRICTION

5.1 Protection for Community Employees. During this Agreement and for one year after its termination (the "Period of Restriction"), Morrison will not, either directly or indirectly, on its own behalf or for others, divert, solicit or hire away, without the Community's prior written approval, any salaried, clinical or professional employee working in the Community's Department and on the Community's payroll at any time during the term of this Agreement (the "Protected Community Employees"). Provided, however, the term Protected Community Employees shall not include: (a) Salaried Personnel employed by Morrison, (b) employees provided by Morrison for assignment to the Department, and (c) employees hired by Morrison pursuant to Article 1 of this Agreement. If Morrison violates this Section 5.1, then Morrison agrees to pay an amount equal to two (2) years' salary of such personnel, as liquidated damages and not as a penalty. Acceptance of such payment does not constitute a waiver of any other remedies or rights the Community may have either at law or in equity, including temporary restraining orders or injunctive relief.

5.2 Protection for Morrison Employees. During the Period of Restriction, the Community will not, either directly or indirectly, on its own behalf or for others, divert, solicit or hire away, without Morrison's prior written approval, any then current or former Morrison salaried, clinical or professional personnel, or allow such personnel to perform Dietary Services directly or indirectly for the Community or on or from its Facility or property (whether employment is by Community, a subsequent third party contractor, or otherwise). If the Community violates this Section 5.2, then the Community agrees to pay an amount equal to two (2) years' salary of such personnel, as liquidated damages and not as a penalty. Acceptance of such payment does not constitute a waiver of any other remedies or rights Morrison may have either at law or in equity, including temporary restraining orders or injunctive relief.

ARTICLE 6 - INSURANCE AND INDEMNITY

6.1 Liability Insurance. Morrison agrees to obtain public liability and products liability insurance in the amount of $1,000,000 combined single limits or maintain a program of self-insurance in connection with the goods and Dietary Services furnished by Morrison under this Agreement. Morrison will not charge the Community for the cost of Morrison's liability insurance.

6.2 Worker's Compensation. Both parties will furnish and maintain workers' compensation insurance as prescribed by law and employer's liability insurance in the amount of $100,000 for all of their respective employees, or either party may provide such coverage through a self-insurance program in accordance with Applicable Law. If requested, each party agrees to furnish the other with a certificate of such insurance (unless self-insured). Each party further agrees to bear its own cost and to hold the other party harmless from any claims by its own employees covered by such workers' compensation insurance/self-insurance. If a workers' compensation injury results in lost time or medical expenses for a Morrison employee, then Morrison's standard unit claim charge will be applied

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM



as a cost of operation. This standard unit claim charge may be adjusted annually, and is currently $750 per claim.

6.3 Indemnity. (a) Subject to Sections 6.2 and 6.4, Morrison shall indemnify, defend and hold harmless the Community and its officers, agents and employees, with respect to any and all liability, losses, claims, suits, damages, taxes, charges and demands of any kind and nature by any party which any of them may incur or suffer as a result of any cause of action relating solely to or arising solely out of any negligent act or omission of Morrison. Morrison shall not have an obligation to indemnify Community for any liability, losses, claims, suits, damages, taxes, charges or demands of any kind or nature arising out of any intentional or negligent acts or omissions of the Community.

(b) Subject to Sections 6.2 and 6.4, the Community shall indemnify, defend and hold harmless Morrison and its officers, agents and employees, with respect to any and all liability, losses, claims, suits, damages, taxes, charges and demands of any kind and nature by any party which any of them may incur or suffer as a result of any cause of action relating solely to or arising solely out of any negligent act or omission of Community. Community shall not have an obligation to indemnify Morrison for any liability, losses, claims, suits, damages, taxes, charges or demands of any kind or nature arising out of any intentional or negligent acts or omissions of the Morrison.

6.4 Release. Morrison and the Community release each other from any responsibility for damage to the Facility or other property owned by either party, caused by fire or other casualty and resulting directly or indirectly from the use or occupancy of the Facility or any portion thereof by Morrison. Each party agrees to notify its respective insurance carrier(s) of this release.

## ARTICLE 7 - FORCE MAJEURE

7.1 Force Majeure Events. Neither Morrison nor the Community shall have any liability for failing to perform this Agreement when performance is prevented by force majeure. The term "force majeure" shall mean any government requirement or request, war, public disorders, acts of enemies, sabotage, strikes, lockouts, picketing, labor or employment difficulties, fires, floods, earthquakes, acts of God, natural disasters, accidents or breakdowns (whether or not preventable), or any other cause beyond the reasonable control of either party.

7.2 Dietary Services Under Force Majeure. The Community and Morrison understand and agree that events such as hurricanes, tornadoes, fires, floods, earthquakes, concerted employee, union or related activity, or similar severe weather, natural disasters, or labor unrest may interfere with the efficient performance and contemplated operations under this Agreement and will result in direct and indirect costs not reflected in the above rates and charges. The parties agree that under such conditions, Morrison will work together with the Community in good faith to provide Dietary Services and develop appropriate responses and courses of action, as is practical and reasonable under the circumstances. Any financial or performance guarantees or incentive penalties to Morrison will not apply under these conditions and instead the Community will be responsible for, and hold Morrison harmless from, all costs and expenses associated with the Dietary Services, responses, courses of action, and operations, whether directly or by reimbursement to Morrison.

## ARTICLE 8 - PROPRIETARY INFORMATION

8.1 Existence. During the term of this Agreement, each party acknowledges that it may acquire, be exposed or obtain access to Proprietary Information of the other party.

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

*CONFIDENTIAL & PROPRIETARY*

8.2 **Protection.** All Proprietary Information is confidential to the disclosing party and at all times will be the disclosing party's sole and exclusive property. In the event a party receives, obtains access or otherwise is exposed to any Proprietary Information of the other party, the recipient will, and shall cause its officers, employees and agents to:

(1) hold the Proprietary Information in trust and in strictest confidence;
(2) not produce, use, copy, distribute or otherwise disseminate the Proprietary Information except to the extent necessary to aid in the performance the Dietary Services; and
(3) otherwise protect the Proprietary Information from disclosure.

8.3 **Disclosure.** Disclosure of Proprietary Information by the receiving party will not be made to anyone except as necessary to aid in the performance of the Dietary Services on a specific need to know basis to those who have agreed to hold the Proprietary Information in trust and strictest confidence in accordance with the terms of this Agreement. The receiving party will take reasonable precautions to prevent disclosure of Proprietary Information to anyone without a need to know such information.

8.4 **Return.** Upon request by the disclosing party, and in any event upon termination of this Agreement, the receiving party shall return all property belonging to the disclosing party that is in the receiving party's custody, control or possession, including all materials containing Proprietary Information.

## ARTICLE 9 - MISCELLANEOUS

9.1 **Notices.** All notices under this Agreement will be:
(a) in writing;
(b) sent prepaid via certified/registered mail, hand delivery or confirmed facsimile (with follow up by another approved notice method); and
(c) sent to the above address, or at such other address as may be designated in writing.

The Community shall also deliver any notice to Morrison at the Facility. Notices are deemed received upon actual receipt.

9.2 **Entire Agreement and Severability.** This Agreement constitutes the entire agreement of the parties with respect to the subject matter. Neither party has relied on any representation, promise, agreement, condition or understanding which is not expressly set forth herein. The terms of this Agreement may not be amended or modified except by a further written statement signed by the parties specifically referencing this Agreement. In case any part of this Agreement is held invalid, illegal or unenforceable, it shall not affect any other provision.

9.3 **Successors/Assignment.** This Agreement will inure to the benefit of, be binding on, and be enforceable by, the Community and Morrison and their lawful successors, representatives and assigns. Either party may assign this Agreement to a parent company, affiliate or subsidiary without notice to the other party. No other assignment shall be valid unless the assignor obtains the prior written consent of the other party.

9.4 **Enforcement.** The prevailing party in any action to enforce this Agreement shall be entitled to recover upon demand all costs and expenses incurred by the prevailing party in connection with such enforcement, including attorney's fees. No failure or delay on the part of either party in

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM



exercising any right or remedy under this Agreement shall operate as a waiver. No provision of this Agreement may be waived except specifically and in writing.

9.5 **Applicable Law.** This Agreement will be governed by and construed in accordance with the laws of the State of Michigan.

9.6 **Survival.** Upon termination, all rights and obligations under this Agreement will end (except for amounts due under Article 2 and the provisions of Articles 5, 6, 8 and 9, all of which will survive such termination).

9.7 **Modification or Termination Upon Advice of Counsel.** If at any time either party reasonably believes in good faith, based upon the advice of reputable legal counsel, that the Agreement or the performance by that party of any of its obligations under the Agreement violates any material law or regulation, State or Federal, presents a substantial risk of the loss or restriction of any licenses or permits, or to obtain licenses or permits that are not feasible, then that party may, upon written notice, require the other party to enter into good faith negotiations to renegotiate the terms of the Agreement, in a manner that attempts to retain as much as possible of the economic arrangements originally contemplated by the parties without violating any applicable legal, tax, or reimbursement requirements. If the parties are unable to reach an agreement concerning the modification of the Agreement within sixty (60) days after the date of the notice seeking renegotiations (or sooner if required by law), then either party may immediately terminate the Agreement without cause in whole or in part by written notice to the other party. The rights of the parties under this Section are in addition to any other termination rights the parties may have under the Agreement.

9.8 **Community Right of Access.** Community shall have the right to enter all areas of the Community utilized by Morrison for operation of the Dietary Services at any time for any purpose, including to inspect such premises or for the purpose of making repairs, additions, or alterations, or to conduct quality assessment and improvement activities with respect to overall Community operations. If Community observes, in its reasonable judgment, any unsafe practices or operations by Morrison that are not in compliance with Applicable Law, Community shall notify Morrison within twenty-four (24) hours. Morrison shall investigate the practices or operations recited in the notice within twenty-four (24) hours and shall either (i) notify Community that all practices and operations are in compliance, including the reasons for such conclusions; or (ii) notify Community of any corrective action to be taken by Morrison and the timeframe for completing the correction.

9.9 **Waiver.** Any waiver by either party of any provision or condition of the Agreement shall be in writing and shall not be construed or deemed to be a waiver of any other provision or condition of the Agreement nor a waiver of a subsequent breach of the same provision of condition, unless such waiver be so expressed in writing and signed by bound party(s).

9.10 **Publicity.** Neither party shall, without the prior written approval of the other party, engage in any publicity, advertising or marketing activities relating to the Agreement, the subject matter hereof, or the other party. This provision will not require Morrison to obtain the prior written approval of the Community with respect to on-site marketing that Morrison performs in connection with its Dietary Services at the Community.

9.11 **Status of Morrison.** The parties acknowledge that Morrison is an independent contractor of Community. In no event will Morrison or any of its employees be deemed a joint venture party, partner, employee, or agent of Community by virtue of the Agreement. Community shall exercise no control over the manner or method by which Morrison meets its obligations under the

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM



Agreement provided that Morrison's services will be performed in a competent and efficient manner in accordance with current professional standards. In the event the IRS or any other governmental agency shall, at any time, question or challenge the independent contractor status of Morrison, its employees or agents, Community and Morrison, upon receipt by either one of them of notice from the IRS or any other governmental agency, shall promptly notify the other party. In the event that either the IRS issues a final determination that Morrison, its employees or agents, as to Community, do not have independent contractor status, Community shall have the right to terminate the Agreement without cause upon ninety (90) days notice to Morrison. The rights of Community to terminate under this Section are in addition to any other termination rights that the Community has under this Agreement.

## ARTICLE 10 - MEDIATION AND LITIGATION

10.1 For any dispute between the parties relating to this Agreement, they will first try to resolve it through good faith negotiations. If it cannot be resolved by negotiation, it will be mediated. Thereafter, any unresolved dispute shall be subject to litigation between the parties. Mediation will take place in or near Kalamazoo, Michigan. The parties agree to exercise their best efforts to promptly settle such disputes in order to minimize costs.

## ARTICLE 11 - DEFINITIONS

11.1 **"Applicable Law"**: statutes, regulations, ordinances and other legal requirements, to the extent applicable to Morrison and the Community.

11.2 **"Assisted Living Operations"**: those areas of the Community that provide assisted living services to residents (exclusive of independent living apartment units, any licensed assisted living areas or operations and any areas or operations of the Community that are licensed as a nursing home).

11.3 **"Assisted Living Residents"**: residents in an area of the Community that conducts Assisted Living Operations.

11.4 **"At Cost" or "Cost"**: the charge by Morrison to Community for items or Dietary Services that will include all applicable supply, labor (with Percentage Rate), insurance, equipment and other related operational costs required for the item or service, but will not include any separate, additional fee by Morrison that is not otherwise provided for in this Agreement.

11.5 **"CPI Adjustment"**: the adjustment to rates and charges based on the 12 Months Percent Change increase over the prior year in the "Consumer Price Index, All Urban Consumers, U.S. City average, Other Food Away From Home (Not Seasonally Adjusted)" Series ID CUUR0000SEFV05 as published by the United States Department of Labor, Bureau of Labor Statistics.

11.6 **"Equipment"**: with regard to food service, this includes items used to store, prepare, deliver and/or serve food, or to clean, and which typically are powered by electricity, gas, etc., such as ovens, stoves, electric mixers and grinders, dishmachines, thermal carts, etc.

11.7 **"Facility"**: the areas, improvements, real and personal property and facilities of the Community, and in particular those related to or used in providing the Dietary Services.

11.8 **"Other Residents"** residents of the Community other than Assisted Living Residents.

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

***CONFIDENTIAL & PROPRIETARY***

11.9 **"Proprietary Information"**: all trade secrets and/or confidential or proprietary information related to the business of Morrison, the Community or their affiliates, in any physical, electronic, computerized or other form, including but not limited to: technical and nontechnical data related to operations; computer programs; software; licensed equipment/hardware, diet manuals; videotapes; methods; techniques; processes; finances; actual or potential customers and suppliers; existing and future products; recipes; production sheets; policy, procedure and/or personnel manuals; employees of Morrison, the Community and their affiliates; and any information which has been disclosed to Morrison or the Community by a third party which Morrison or the Community is obligated to treat as confidential.

11.10 **"Salaried Percentage Rate" and "Hourly Percentage Rate"**: A percentage rate of payroll charge which relates to direct and indirect payroll taxes, workers' compensation insurance, employer's portion of state and federal unemployment compensation tax, social security tax, accident and health insurance, life insurance and retirement plan contributions, fringe benefits and related overhead. Incentive pay is also part of Morrison's Management Personnel costs, and may be included in the Salaried Percentage Rate or be charged separately. The amount of the increase will be based on the percentage increase in the Employment Cost Index, Private Industry, Total Benefits, 12-Month Percent Change, Not Seasonally Adjusted – CIU2030000000000A as published by the United States Department of Labor, Bureau of Labor Statistics (the "ECI Benefits Index") for the previous twelve month period. Should the ECI Benefits Index decrease over the previous twelve month period, then the applicable rates will not change. In addition to the above, Morrison's applicable Salaried Percentage Rate and Hourly Percentage Rate shall also be adjusted (either increased or decreased) to reflect changes in Applicable Law that affect Morrison's applicable Salaried Percentage Rate or Hourly Percentage Rate such as changes in payroll tax rates, insurance rates (e.g. federal or state unemployment insurance) or required benefits; such increases shall be changed effective from the date of change in such rates or benefits.

11.11 **"Smallwares"**: non-powered kitchen related items used to prepare and serve food, such as pots, pans, scoops, chef knives, cutting boards, bowls, cooking and kitchen utensils and similar loose items, etc.

11.12 **"Tablewares"**: items used by individuals in consuming food, such as china, dishware, silverware, flatware, table utensils, glassware, etc.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives, effective as of the Effective Date.

[Signatures continued on next page.]

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

**CONFIDENTIAL & PROPRIETARY**

WITNESS: ______________________

MORRISON MANAGEMENT SPECIALISTS, INC.

By ______________________

As its ______________________

Date 6/25/07

WITNESS: ______________________

SUNRISE IV FRANKLIN SL, LLC

By ______________________

As its VP Accounting

Date 6-21-2007

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM




# Invoice

SAMPLE

Fountains at Franklin
28301 Franklin Road
Southfield, MI 48034

***Please make check payable to:***
***MORRISON SENIOR DINING***

***Please remit payment to:***

| House Code | | Invoice | Invoice Date |
|---|---|---|---|
| 5015 | Prebill | | |

| Description | Amount |
|---|---|
| Total Prebill for | $133,174.00 |
| Total Due Morrison Senior Dining | $133,174.00 |

TERMS: Net due within 14 days.
1.50% per month service charge.
Annual percentage rate of 18%.

| | |
|---|---|
| Total Invoice Amount | $133,174.00 |
| Payment Received | |
| TOTAL | $133,174.00 |

P. O. Box 102289 Atlanta, GA 30368-2289
www.iammorrison.com

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM



Invoice

SAMPLE

Fountains at Franklin
28301 Franklin Road
Southfield, MI 48034

***Please make check payable to:*** pre
***MORRISON SENIOR DINING***

***Please remit payment to:***

| House Code | | Invoice | Invoice Date |
|---|---|---|---|
| 5015 | Reconciliation Bill | | |

| Description | | Amount |
|---|---|---|
| Cost of Food | | $33,828.00 |
| Cost of Payroll | | $63,018.00 |
| Management Fee | | $4,027.33 |
| Administration Fee | | $23,001.57 |
| Cost of Direct Expense | | $7,562.00 |
| Total Billed for Month | | $131,436.90 |
| Less Amount Billed | (pre bill) | ($132,388.00) |
| Balance Due for Month | (credit) | ($951.10) |
| Due Morrison Management Specialist Inc. | | ($951.10) |

TERMS: Net due within 14 days.
1.50% per month service charge.
Annual percentage rate of 18%.

| | |
|---|---|
| Total Invoice Amount | $131,436.90 |
| Payment Received | |
| TOTAL | $131,436.90 |

P. O. Box 102289 Atlanta, GA 30368-2289
www.iammorrison.com

Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

AMENDMENT
TO THE AGREEMENT BY AND BETWEEN
MORRISON MANAGEMENT SPECIALISTS, INC.
(Hereinafter referred to as "Morrison")

and

FOUNTAINS FRANKLIN SL, LLC
(as successor in interest to Sunrise IV Franklin SL, LLC)
(hereinafter referred to as "Community")

Effective the 1st day of May, 2007

The parties hereby ratify, extend and affirm this Agreement between the parties as referenced herein, and to the terms and conditions as set forth in the original Agreement, and any Amendments thereto, the following Amendment is made a part of the original Agreement effective July 1, 2010:

The following is added as subparagraph (g) to Paragraph 1.2 of the Agreement and made a part hereof:

(g) The parties shall review annual merit increases for the Personnel and shall agree upon budgeted levels prior to the start of each Client fiscal year.

Paragraph 2.3(a) is hereby deleted in its entirety and the following inserted therefore and made a part hereof:

(a) Morrison shall be allowed to charge and receive $53,328 annually effective May 1, 2011 as a combined general and administrative charge and management fee, all payable in equal monthly installments.

Paragraph 11.10 is hereby deleted in its entirety and the following inserted therefore and made a part hereof:

11.10 "Salaried Percentage Rate" and "Hourly Percentage Rate": A percentage rate of payroll charge which relates to direct and indirect payroll taxes, workers' compensation insurance, employer's portion of state and federal unemployment compensation tax, social security tax, accident and health insurance, life insurance and retirement plan contributions, fringe benefits and related overhead. Incentive pay is also part of Morrison's Management Personnel costs, and may be included in the Salaried Percentage Rate or charged separately. The Salaried Percentage Rate and Hourly Percentage Rate shall be subject to an annual increase each year that this Agreement is effect (generally on October 1 of each year commencing on October 1, 2011). The new Salaried Percentage Rate and Hourly Percentage Rate will be equal to the lesser of the following: (a) the Salaried Percentage Rate and the Hourly Percentage Rate assigned by Morrison's parent company to the Client's account; or (b) the then current Salaried Percentage Rate and Hourly Percentage Rate with an increase based on the percentage increase in the Employment Cost Index, Private Industry, Total Benefits, 12-Month Percent Change, Not Seasonally Adjusted – CIU2030000000000A as published by the United States Department of Labor, Bureau of Labor Statistics (the "ECI Benefits Index") for the

previous twelve month period. Should the ECI Benefits Index decrease over the previous twelve month period, then the applicable rates will not change. In addition to the above, Morrison's applicable Salaried Percentage Rate and Hourly Percentage Rate shall also be adjusted (either increased or decreased) to reflect changes in Applicable Law that affect Morrison's applicable Salaried Percentage Rate or Hourly Percentage Rate such as changes in payroll tax rates, insurance rates (e.g. federal or state unemployment insurance) or required benefits; such increases shall be changed effective from the date of change in such rates or benefits.

All other terms and conditions as set forth in the original Agreement, and not in conflict with this Amendment, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused their duly authorized officers to execute this Amendment, in duplicate, on the date appearing with their respective signatures.

WITNESS: ____________________

MORRISON MANAGEMENT SPECIALISTS, INC.

By: [signature]

Its: RVP

Date 5-19-11

WITNESS: [signature]

FOUNTAINS FRANKLIN SL, LLC
(as successor in interest to Sunrise IV Franklin SL, LLC)

By: [signature]
DAVID BARNES, PRESIDENT OF WATERMARK

Its: RETIREMENT COMMUNITIES, INC ACTING AS AUTHORIZED AGENT ON BEHALF OF FOUNTAINS FRANKLIN SL, LLC

Date 5/18/2011





Received for Filing Oakland County Clerk 5/23/2017 2:27 PM

CERTIFIED MAIL

7015 1520 0001 1677 0016

neopost
05/24/2017
US POSTAGE
FIRST-CLASS MAIL
$05.38⁰


ZIP 48075
041L11215479

neopost
05/24/2017
US POSTAGE
$07.70⁰

ZIP 48075
041L11215479




SULLIVAN, WARD, ASHER & PATTON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
WTRM-126535
270-RSL
1000 MACCABEES CENTER
25800 NORTHWESTERN HIGHWAY
POST OFFICE BOX 222
SOUTHFIELD, MICHIGAN 48037-0222

MORRISON MANAGEMENT SPECIALISTS, INC.
CSC-LAWYERS INCORPORATING SERVICE
601 ABBOT ROAD
EAST LANSING, 48823












