# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: September 20, 2018

Ms. Jennifer M Cascio
Shook, Hardy & Bacon
111 S. Wacker Drive, Suite 5100
Chicago, IL 60606

Mr. Charles C. Eblen
Shook, Hardy & Bacon
2555 Grand Boulevard
Kansas City, MO 64108

Mr. Ronald Scott Lederman
Sullivan, Ward, Asher & Patton
25800 Northwestern Highway, Suite 1000
Southfield, MI 48075

Re: Case No. 17-2129, *Watermark Senior Living v. Morrison Mgmt. Specialists Inc*
Originating Case No. : 5:17-cv-11886

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0210p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

WATERMARK SENIOR LIVING RETIREMENT
COMMUNITIES, INC.,

    *Plaintiff-Appellant*,

  *v.*

MORRISON MANAGEMENT SPECIALISTS, INC.,

    *Defendant-Appellee*.

No. 17-2129

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:17-cv-11886—John Corbett O'Meara, District Judge.

Argued: June 6, 2018

Decided and Filed: September 20, 2018

Before: BOGGS, SILER, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Ronald S. Lederman, SULLIVAN, WARD, ASHER & PATTON, P.C., Southfield, Michigan, for Appellant. Charles C. Eblen, SHOOK, HARDY & BACON, LLP, Kansas City, Missouri, for Appellee. **ON BRIEF:** Ronald S. Lederman, SULLIVAN, WARD, ASHER & PATTON, P.C., Southfield, Michigan, for Appellant. Charles C. Eblen, SHOOK, HARDY & BACON, LLP, Kansas City, Missouri, for Appellee.

_____

**OPINION**

_____

  BOGGS, Circuit Judge. Plaintiff-Appellant Watermark Senior Living Retirement Communities, Inc. appeals the district court's judgment dismissing its claims for contractual

Case 5:17-cv-11886-JCO-DRG ECF No. 48-1 filed 09/20/18 PageID.362 Page 4 of 17 (4 of 17)

No. 17-2129    *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*    Page 2

indemnification and breach of contract. In a prior lawsuit in Michigan state court, a jury determined that Watermark was liable for negligently causing the death of a patient at one of its nursing homes. After the trial court entered judgment on the verdict, Watermark and the patient's estate settled and moved the court to set aside the judgment, which the court did.

Watermark then filed this lawsuit against defendant-appellee Morrison Management Specialists, Inc., alleging that Morrison, which contracted with Watermark to provide kitchen and dining services at the nursing home, was liable to it for the patient's death. The district court dismissed both of Watermark's claims, concluding that they were barred by issue preclusion, or collateral estoppel as the doctrine also is known, as a result of the first lawsuit.

The main issue on appeal is whether a judgment that is set aside upon settlement can be used for collateral-estoppel purposes in future litigation. We hold that it can. But we conclude that the judgment in question in this case only precludes Watermark's contractual-indemnification claim and not its breach-of-contract claim. We therefore affirm the district court's judgment in part and reverse it in part.

I

In 2012, Willie Mae Henderson, an elderly patient with Alzheimer's disease at Watermark's nursing home in Franklin, Michigan, wandered from her room unattended and died after drinking detergent that she found in a kitchen cabinet. Henderson's estate filed a wrongful-death suit ("*Henderson* action") against Watermark in Michigan state court, alleging that Watermark was negligent for understaffing the nursing home and for improperly maintaining, repairing, and securing the cabinet where the detergent was located.

Although Morrison provided kitchen and dining services at the facility and two of its employees had been in the kitchen shortly before Henderson discovered the detergent in it, Watermark chose to defend the case on its own rather than implead Morrison as a third-party defendant. In fact, rather than blaming Morrison for Henderson's death, Watermark argued at trial that Morrison's employees had properly locked the cabinet prior to leaving for the evening and suggested that "something happened" to the cabinet doors between their departure and when Henderson found the detergent. Unpersuaded, the jury unanimously found that Watermark had

Case 5:17-cv-11886-JCO-DRG ECF No. 24-8 filed 09/20/18 PageID.363 Page 5 of 17 (5 of 17)

No. 17-2129       *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*       Page 3

negligently caused Henderson's death and awarded $5.08 million to Henderson's estate.[1] After the court entered judgment on the jury verdict, Watermark moved for judgment notwithstanding the verdict ("JNOV"), new trial, or remittitur, which the court denied.

Watermark did not appeal, choosing instead to settle with Henderson's estate for $3.65 million. The parties then jointly moved the trial court to set aside the judgment; the court granted the motion and dismissed the action with prejudice.

A few months later, Watermark filed this action against Morrison in Michigan state court. The complaint stated two claims, one for contractual indemnification and another for breach of contract. Watermark alleged that "[a]t the time of the incident in question, Defendant Morrison was contractually responsible for all kitchen operations at the [nursing home], and had the responsibility for keeping the cabinet door in question locked when not in use." Watermark also contended that "[t]wo Morrison employees were the last individuals to have access to the cabinet door immediately prior to the incident involving Mrs. Henderson."

Watermark based its indemnification claim on a clause in its contract with Morrison, which stated:

> Morrison shall indemnify, defend and hold harmless [Watermark] and its officers, agents and employees, with respect to any and all liability, losses, claims, suits, damages, taxes, charges and demands of any kind and nature by any party which any of them may incur or suffer as a result of any cause of action relating solely to or arising solely out of any negligent act or omission of Morrison. Morrison shall not have an obligation to indemnify [Watermark] for any liability, losses, claims, suits, damages, taxes, charges or demands of any kind or nature arising out of any intentional or negligent acts or omissions of [Watermark].

Watermark's breach-of-contract claim, by contrast, did not rely on the contract's indemnification provision. Instead, Watermark alleged that Morrison's contractual obligation to provide kitchen services included the duty "to use ordinary care to maintain the [nursing home's] kitchen area in a reasonably safe condition." Reversing the position it took in the *Henderson* action, Watermark claimed that "Morrison breached its contractual obligations to [Watermark]

---

[1]Prior to beginning its deliberations, the jury was instructed that Watermark "could not delegate the responsibility of securing and/or locking the kitchen cabinet in the terrace unit to Morrison Company or to its employees to avoid liability."

by failing to lock the door to the cabinet under the kitchen sink after using it immediately prior to the incident involving Mrs. Henderson." "As a result of a breach of Morrison's contractual obligations, the subject door was kept unlocked and fully accessible to Willie Mae Henderson, who gained access into the cabinet and drank toxic dishwashing detergent contained therein."

For both the indemnification claim and the breach-of-contract claim, Watermark alleged damages of $3.65 million—the amount that the company agreed to pay to settle the *Henderson* action.

Morrison removed to federal court, and moved to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6), alleging that they were barred by issue preclusion as a result of the jury verdict in the *Henderson* action. Morrison argued that, pursuant to the contract's indemnification provision, "Morrison's indemnity obligation is not triggered unless: (1) the loss arises solely – 100% – out of Morrison's negligence and (2) the loss does not arise from *any* negligent act or omission of [Watermark]." Because the jury in the *Henderson* action determined that Watermark's negligence caused Henderson's death and because Watermark therefore was collaterally estopped from relitigating that issue, Morrison contended that Watermark's contractual-indemnification claim must fail. Morrison argued that Watermark's breach-of-contract claim also was precluded from going forward because that claim depended on the allegation that Morrison's employees left the cabinet doors unlocked, which, according to Morrison, already had been litigated in the *Henderson* action. The district court granted Morrison's motion to dismiss, agreeing that issue preclusion barred both claims.

## II

Watermark advances three arguments on appeal: (1) issue preclusion cannot apply to this case because the judgment in the *Henderson* action was set aside pursuant to the parties' settlement agreement and therefore is not a valid final judgment; (2) even if a judgment that is set aside might preclude relitigating an issue in a later suit, such a rule should not be applied here but only in future cases; and (3) even if that rule *does* apply to the instant action, Watermark's breach-of-contract claim is unaffected by it. We consider each argument in turn.

Case 5:17-cv-11886-JCO-DRG ECF No. 248-2 filed 09/20/19 PageID.365 Page 7 of 17 (7 of 17)

No. 17-2129     *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*     Page 5

### A. Standard of Review

We examine de novo a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018). To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

> However, we have recognized that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment.

*Ibid.* Such public records that a court may consider include documents from other court proceedings. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

To its motion to dismiss, Morrison attached a copy of its contract with Watermark, Watermark's Motion for JNOV, New Trial or Remittitur, and transcripts of the closing arguments and jury verdict in the *Henderson* action. For its part, to its response to the motion to dismiss Watermark attached trial testimony from one of Morrison's employees and the trial court's order setting aside the judgment. We may consider these documents without thereby converting Morrison's motion to dismiss into a motion for summary judgment. *See In re Omnicare*, 769 F.3d at 466.

### B. Issue Preclusion When a Judgment Has Been Set Aside as a Condition of Settlement

We must give the same preclusive effect to a state-court judgment that the judgment would receive in the rendering state, *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007), which in this case is Michigan. "In determining questions of Michigan law, we follow the decisions of the Michigan Supreme Court." *Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320 (6th Cir. 1999). If the Michigan Supreme Court "has not yet addressed the issue

Case 5:17-cv-11886-JCO-DRG ECF No. 248-2 filed 09/20/19 PageID.366 Page 8 of 17 (8 of 17)

No. 17-2129      *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*      Page 6

presented, we must predict how the court would rule by looking to all available data, including decisions of [Michigan's] appellate courts." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014).

Under Michigan law, three elements generally must be satisfied for issue preclusion to apply: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004) (alteration in the original) (footnote omitted) (quoting *Storey v. Meijer, Inc.*, 429 N.W.2d 169, 171 n.3 (Mich. 1988)). However, mutuality of estoppel is not required where, as here, a party asserts issue preclusion defensively. *Id.* at 850. Issue preclusion is "generally said to have three purposes: To 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *City of Detroit v. Qualls*, 454 N.W.2d 374, 382 n.30 (Mich. 1990) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

Watermark argues that issue preclusion does not bar either of its claims in this suit because the judgment in the *Henderson* action neither was final nor valid since it was set aside upon settlement. Although Watermark casts its argument in terms of validity and finality, its objection can be understood in even more fundamental terms: since the *Henderson* judgment has been set aside, there simply is no extant *judgment* that can be used to preclude its claims from going forward. Neither party has brought to our attention any Michigan authority that has decided whether issue preclusion is applicable in these circumstances, though our own research shows that at least one Michigan court has contemplated the possibility. *See Williams v. Litton Sys., Inc.*, 416 N.W.2d 704, 707 n.3 (Mich. Ct. App. 1987), *aff'd*, 449 N.W.2d 669 (Mich. 1989).

Because neither Michigan's Supreme Court nor any of its appellate courts has decided the question before us, we must look to other "available data," including restatements of law and other judicial decisions, to predict how the Michigan Supreme Court would resolve it. *See In re Darvocet*, 756 F.3d at 937; *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). The general rule is that a judgment that is vacated or set aside is without preclusive effect in later litigation. *See, e.g.*, *Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d

...

...

...

...

Case 5:17-cv-11886-JCO-DRG ECF No. 48-1 filed 09/20/18 PageID.367 Page 9 of 17 (9 of 17)

1138, 1146 (2d Cir. 1992), *aff'd sub nom. John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86 (1993); *Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 340 (7th Cir. 1991). This rule is also our own. *See Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) (per curiam). Under this rule, judgments that are reversed and vacated either by an appellate or trial court typically will lose their preclusive effect. *See id.* at 444–45; *Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989); Restatement (Second) of Judgments § 13, cmt. f (1982) (stating that a judgment ceases to be final if a trial court sets it aside after granting a motion for a new trial); *see also FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 289–90 (6th Cir. 2018) (explaining that a partial reversal of a judgment generally vacates or voids only the part of the judgment that has been reversed and that the part of the judgment that remains can support issue preclusion). Similarly, a party who obtains vacation of a judgment when a case becomes moot on appeal through no fault of that party may be able to avoid the application of issue preclusion against it in future litigation. *See United States v. Munsingwear*, 340 U.S. 36, 39–40 (1950).

But the general rule that vacatur deprives a judgment of its preclusive force is not without exceptions. In fact, several courts have recognized that judgments may retain their finality and preclusive effect when they are set aside or vacated upon settlement. *See, e.g.*, *Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 218–23 (3d Cir. 2003); *Bates v. Union Oil Co.*, 944 F.2d 647, 649–52 (9th Cir. 1991); *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1187–92 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983). *But see Harris Tr.*, 970 F.2d at 1146 (denying preclusive effect to a judgment vacated upon settlement).

We are persuaded that the Michigan Supreme Court would adopt the teaching of *Sentinel Trust* and other courts that have held that judgments can support issue preclusion even though they are set aside or vacated upon settlement. In reaching this conclusion in *Sentinel Trust*, the Third Circuit observed that "for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be given preclusive effect." 316 F.3d at 221–22 (alteration in original) (quoting Restatement (Second) of Judgments § 13, cmt. g).

Case 5:17-cv-11886-JCO-DRG ECF No. 24 filed 09/20/18 PageID.368 Page 10 of 17 (10 of 17)

No. 17-2129     *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*     Page 8

It found additional authority for this view of finality in two of this court's cases. *See id.* at 222 (discussing *Employees Own Fed. Credit Union v. City of Defiance*, 752 F.2d 243 (6th Cir. 1985) and *Birgel v. Bd. of Commr's of Butler Cty.*, 125 F.3d 948 (6th Cir. 1997)). In *Employees Own*, we applied *res judicata* to a state trial court's decision in which the court had made findings and conclusions adverse to the plaintiff Credit Union. 752 F.2d at 244. But the court never formally entered a judgment and instead permitted the Credit Union to file an amended complaint within twenty days. *Ibid.* Before the twenty-day period had passed, the Credit Union voluntarily dismissed its action without prejudice and shortly thereafter filed the same claim in federal court. Even though the state court had not entered a formal judgment, we held that its decision on the merits of the Credit Union's claim was sufficiently firm to be accorded preclusive effect and therefore barred the Credit Union's federal action. *Id.* at 245. Likewise, in *Birgel*, we held that a state appellate court's decision dismissing the plaintiff's claim for breach of contract was sufficiently firm to bar an identical claim that the plaintiff brought in federal court. 125 F.3d at 952. We did so even though we recognized that technically there was no final judgment in the state case because the appellate court reversed it on different grounds and the plaintiff voluntarily dismissed his suit before the trial court decided it on remand. *Id.* at 949–52. We agree with the *Sentinel Trust* court that our holdings in these cases support the conclusion that a judgment that is set aside as a condition of settlement can bar future litigation. Although, as a formal matter, there is no judgment in these circumstances, a court's decision may remain sufficiently firm to be given preclusive effect.

Policy considerations reinforce our conclusion that the Michigan Supreme Court would apply issue preclusion to a judgment that is set aside or vacated upon settlement. In *Monat*, the Michigan Supreme Court decided that mutuality of estoppel is not required when collateral estoppel is asserted defensively. 677 N.W.2d at 844–45. A ruling to the contrary, the court reasoned, would conflict with the purposes undergirding the doctrine of collateral estoppel.

> [It] would require defendants to relitigate previously adjudicated issues; it would require the judicial system to employ scarce resources repeatedly adjudicating the same issue; it would increase the likelihood of inconsistent decisions being rendered by the judicial process; it would promote opportunities for parties to use the judicial process in a vexatious manner; and it would require defendants to

Case 5:17-cv-10886-JCO-DRG ECF No. 248 filed 09/20/19 PageID.369 Page 11 of 17 (11 of 17)

No. 17-2129     *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*     Page 9

> expend resources relitigating issues. Each of these effects would only weaken our judicial process.

*Id.* at 851 (footnotes omitted). A decision that issue preclusion does not apply in the present circumstances similarly would be at odds with the purposes of the doctrine. It would incentivize losing parties to pay to settle adverse judgments in order to avoid their issue-preclusive effects. While such a rule might encourage settlement of the first action, it also would authorize losing parties to take another stab at litigating their claims, in the hope that they might garner a more favorable result the second time around. Permitting this litigation strategy therefore would increase the probability of inconsistent decisions and require the judicial system to expend its scarce resources readjudicating these issues. *See ChriMar Sys., Inc. v. Foundry Networks, Inc.*, No. 06-13936, 2010 WL 3431606, at *2, 2010 U.S. Dist. LEXIS 89335, at *7–8 (E.D. Mich. Apr. 23, 2010) (Special Master Mark A. Lemley) ("The subsequent settlement of a dispute after the entry of a dispositive order does not defeat finality. . . . If settlement revoked the preclusive effect of an earlier judgment, this would have the effect of allowing losing parties to pay money for the option to not have the doctrine of collateral estoppel applied to them. The purpose of the doctrine—to improve the procedural efficiency of the legal system and avoid repetitive litigation of decided issues—counsels against plaintiff's argument.").

Equitable considerations also help to explain why a principled distinction can be drawn between the potential preclusive effects of different kinds of vacated judgments. When a judgment is vacated because a court has decided that the ruling was faulty, *see Erebia*, 891 F.2d at 1215, it obviously makes no sense to treat the vacated judgment's determination of that issue as conclusive. It is similarly inappropriate to give preclusive effect to the judgment in a case that becomes moot through no fault of the party against whom issue preclusion is asserted. *See Munsingwear*, 340 U.S. at 39–40. Because "happenstance," *id.* at 40, or the unilateral actions of the opposing party, *see Azar v. Garza*, 138 S. Ct. 1790, 1792–93 (2018) (per curiam), have deprived the losing party of the opportunity to contest the underlying judgment, fairness counsels against barring that party from having a second chance to litigate the relevant issue.

But the equities are otherwise when a litigant elects to settle rather than appeal after receiving an adverse judgment. In such circumstances, the losing party acquiesces in the court's

Case 5:17-cv-11886-JCO-DRG ECF No. 248-1 filed 09/20/19 PageID.3780 Page 12 of 17 (12 of 17)

No. 17-2129    *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*    Page 10

decision, even if he disagrees with it. The party has had his day in court and waived his right to an appeal. *See Monat*, 677 N.W.2d at 847 (applying issue preclusion when party negotiated away its right to appeal prior to judgment in first action). That is all that fairness requires: "One bite at the apple is enough." *Emps. Own Fed. Credit Union*, 752 F.2d at 245.

### C. Retroactivity and Prospectivity of Rule Permitting Issue Preclusion to Apply to a Judgment Set Aside upon Settlement

Of course, even if a judgment that is set aside as a condition of settlement can be used to bar the relitigation of an issue in a subsequent action, it does not necessarily follow that our recognition of this rule means that we must apply it to this suit. Watermark argues that we should not do so because a rule that accepts that a judgment that is set aside upon settlement may have preclusive effect in a later case should be applied only prospectively and not applied in this case.

However, under Michigan law, "the general rule is that judicial decisions are to be given complete retroactive effect." *Hyde v. Univ. of Mich. Bd. of Regents*, 393 N.W.2d 847, 854 (Mich. 1986). "Complete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law." *Ibid.*

> The threshold question in determining the application of a new decision is whether the decision in fact clearly established a new principle of law. If that question is answered in the affirmative, then a court must weigh three factors in deciding whether a judicial decision warrants prospective application: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactive application on the administration of justice.

*Paul v. Wayne Cty. Dep't of Pub. Serv.*, 722 N.W.2d 922, 924 (Mich. Ct. App. 2006) (per curiam).

Watermark contends that the threshold condition is satisfied in this case because a decision holding that a judgment that is set aside upon settlement has preclusive effect in later litigation requires recognizing an exception to the valid-and-final-judgment requirement for issue preclusion. Watermark also suggests that the three-factor test compels the conclusion that such a decision should be applied only prospectively because Watermark based its decision to settle and

Case 5:17-cv-11886-JCO-DRG ECF No. 248-2 filed 09/20/19 PageID.371 Page 13 of 17

No. 17-2129        *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*        Page 11

have the *Henderson* judgment set aside on its belief that this outcome would mean that that the judgment would have no preclusive effect.

Watermark's argument fails at the first step because a decision that issue preclusion may apply to a judgment that is set aside upon settlement does not clearly establish a new principle of law. Nor is it inconsistent with "clear and uncontradicted case law." *Hyde*, 393 N.W.2d at 854. The *Monat* court's decision to grant full retroactive effect to its determination that mutuality is not necessary when a party asserts issue preclusion defensively is instructive. The court explained that its decision did not represent a sweeping change in the law, observing that "there is no previous decision of this Court that has decided whether mutuality should apply in the defensive context." 677 N.W.2d at 852 n.15. So too here, a decision that a judgment that is set aside upon settlement can support the application of issue preclusion in a later case does not represent a sweeping change to the law. It is simply a judicial interpretation of what the law is— a question of law, we note, that has not previously been decided by a Michigan appellate court. *See Holmes v. Mich. Capital Med. Ctr.*, 620 N.W.2d 319, 324 (Mich. Ct. App. 2000) (per curiam) ("That a decision may involve an issue of first impression does not in and of itself justify giving it only prospective application where the decision does not announce a new rule of law or change existing law, but merely provides an interpretation that has not previously been the subject of an appellate court decision.").

### D. Application of Issue Preclusion to Watermark's Two Claims

Having determined that under Michigan law a judgment that has been set aside may be used for collateral-estoppel purposes in subsequent litigation and that it may be given full retroactive effect here, we now consider whether it is in fact applicable to either of Watermark's claims.

#### a. *Contractual-Indemnification Claim*

A straightforward application of Michigan's rules on issue preclusion bars Watermark's contractual-indemnification claim. Because the parties' contract provides that Morrison has no obligation to indemnify Watermark for any damages that arise out of the latter's negligence, Watermark can prevail on its claim only if it can show that the damages it seeks were not the

Case 5:17-cv-11886-JCO-DRG ECF No. 248-2 filed 09/20/19 PageID.372 Page 14 of 17 (14 of 17)

No. 17-2129       *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*       Page 12

result of its own negligence. It cannot do so. The jury in the *Henderson* action determined that the damages that Watermark now seeks were the result of Watermark's negligence. Watermark does not dispute that it had a full and fair opportunity to contest that issue, and that it in fact did so at the trial. *See Monat*, 677 N.W.2d at 845. The jury's determination of Watermark's negligence was essential to its verdict, and the trial court entered a valid[2] and final judgment pursuant to that verdict. *See ibid.* As we have already held, the fact that the trial court set aside the judgment after Watermark and Henderson's estate settled does not undermine the validity or finality of that judgment—at least not for the purposes of issue preclusion. The judgment in this case was sufficiently firm to be accorded preclusive effect. Restatement (Second) of Judgments § 13, cmt. g. Finally, because Morrison is asserting collateral estoppel defensively, mutuality of estoppel is not required. *See Monat*, 677 N.W.2d at 844–45. Under these circumstances, Watermark is precluded from relitigating whether its negligence caused Henderson's death and therefore its contractual-indemnification claim must be dismissed.

### b.   *Breach-of-Contract Claim*

Watermark argues that even if issue preclusion applies to its contractual-indemnification claim, the district court erred in holding that issue preclusion likewise bars its breach-of-contract claim. We agree.

Morrison contends that issue preclusion applies to the breach-of-contract claim because, in its view, that claim depends upon whether Morrison's employees failed to lock the cabinet doors and that the jury in the *Henderson* action already decided that issue. Although the district court gave little explicit attention to the breach-of-contract claim, it appeared to agree with Morrison that the claim was precluded by collateral estoppel because the claim's factual underpinnings were litigated in the *Henderson* action.

---

[2] We note that for purposes of issue preclusion, a judgment is valid so long as the court that rendered it had jurisdiction over the subject matter and either the party against whom the judgment was rendered submitted to the jurisdiction of the court or that party had adequate notice and the court had territorial jurisdiction of the action. Restatement (Second) of Judgments § 1 (1982); *see United States v. Kasler Elec. Co.*, 123 F.3d 341, 345 (6th Cir. 1997); *see also* Restatement (Second) of Judgments § 81 (defining "invalid judgment"); § 27, cmt. k (noting that "[t]he requisites of a valid judgment [for issue preclusion] are set forth in § 1"). There is no indication that these conditions were not satisfied in the *Henderson* action.

Case 5:17-cv-11886-JCO-DRG ECF No. 24-2 filed 09/20/19 PageID.373 Page 15 of 17 (15 of 17)

No. 17-2129          *Watermark Senior Living v. Morrison Mgmt. Specialists, Inc.*          Page 13

Morrison is mistaken. For issue preclusion to apply, "the ultimate issue to be concluded [in the second action] must be the same as that involved in the first action." *Rental Props. Owners Ass'n of Kent Cty. v. Kent Cty. Treasurer*, 866 N.W.2d 817, 834 (Mich. Ct. App. 2014) (per curiam). "The issues must be identical, and not merely similar." *Ibid.* As we have already explained, that rule applies to Watermark's indemnification claim because that claim is viable only if Watermark's negligence was not the cause of the damages for which it seeks indemnification, and the jury in the *Henderson* action already has decided that Watermark was negligent.

But the jury's finding of negligence does not preclude Watermark from going forward with its breach-of-contract claim. Unlike its claim for indemnity, Watermark's breach-of-contract claim does not rely on the indemnity provision of the parties' contract. Instead, Watermark alleges that Morrison breached its contractual obligation to provide kitchen and dining services at the nursing home by failing to use ordinary care to maintain the nursing home's kitchen area in a reasonably safe condition. This claim is based on the notion that "accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort *as well as a breach of contract*." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 591 (Mich. 2004) (emphasis added) (quoting *Clark v. Dalman*, 150 N.W.2d 755, 760 (Mich. 1967)). In contrast to the indemnification claim, Morrison cannot use Watermark's negligence as a defense under this theory of liability. *See Nelson v. Nw. Sav. & Loan Ass'n*, 381 N.W.2d 757, 759 (Mich. Ct. App. 1985).

Accordingly, Watermark's breach-of-contract claim is barred by issue preclusion only if the jury in the *Henderson* action determined that Morrison used ordinary care in carrying out its contractual duties. It did not do so. The jury did not make any specific factual findings regarding, for instance, whether Morrison's employees locked the cabinet doors prior to leaving for the evening. Neither did the jury make any more general conclusions about whether Morrison was responsible for Henderson's death. The jury decided only that Watermark was negligent, not that Morrison was free of blame.

### III

We therefore **AFFIRM** in part and **REVERSE** in part and **REMAND** for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-2129

WATERMARK SENIOR LIVING RETIREMENT COMMUNITIES, INC.,

    Plaintiff - Appellant,

v.

MORRISON MANAGEMENT SPECIALISTS, INC.,

    Defendant - Appellee.

**FILED**
Sep 20, 2018
DEBORAH S. HUNT, Clerk

Before: BOGGS, SILER, and SUTTON, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with the opinion of this court.

                                          ENTERED BY ORDER OF THE COURT

                                          Deborah S. Hunt, Clerk