UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WATERMARK SENIOR LIVING
RETIMREMENT COMMUNITIES, INC.,

        Plaintiff,                          Case No. 17-11886
                                                Hon. Mark A. Goldsmith

vs.


MORRISON MANAGEMENT
SPECIALISTS, INC.,

        Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT MORRISON'S MOTION FOR JUDGMENT ON THE
## PLEADINGS (Dkt. 28)

This matter is before the Court on Defendant Morrison Management Specialists, Inc.'s

motion for judgment on the pleadings (Dkt. 28). Plaintiff Watermark Senior Living Retirement

Communities, Inc., brings this breach of contract action against Morrison for allegedly failing to

exercise ordinary care in executing its obligations to manage the kitchen at one of Watermark's

retirement communities, resulting in the death of one of its residents. Briefing on the motion is

complete. Because oral argument will not aid the Court's decisional process, the motion will be

decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). For the following reasons,

the Court denies Morrison's motion.

## I.      BACKGROUND

This action arises from the tragic death of Willie Mae Henderson. Henderson resided at

Watermark's assisted-living community, The Fountains of Franklin. In 2012, Henderson

wandered from her room in the memory care unit to the facility's kitchen, opened a cabinet door

1

under a sink that contained toxic dishwashing detergent, and drank the toxic detergent, which resulted in her death. Compl. ¶¶ 5-7. At that time, Morrison was under contract to provide dietary services at the facility, which included managing and securing the kitchen facility. Id. ¶ 8; Agreement, Ex A. to Mot., at 1 (Dkt. 28-1).[1] According to Watermark, two Morrison employees were the last individuals to have access to the cabinet door immediately prior to the incident. Compl. ¶ 11.

Henderson's estate sued Watermark in state court, alleging that Watermark was negligent for leaving the cabinet door unlocked. Compl. ¶¶ 4-6. Watermark did not implead Morrison in the state court action. Instead, it defended the action alone. Countercl. ¶ 4 (Dkt. 25). The jury found against Watermark and awarded Henderson's estate $5.08 million. Id. ¶ 5. Rather than appeal the judgment, Watermark settled with Henderson's estate for $3.65 million. Id. ¶ 6.[2] Morrison's counsel attended the settlement mediation. Compl. ¶ 16. A few months later, Watermark filed the present action against Morrison alleging claims of contractual indemnification and breach of contract seeking to recover the $3.65 million plus all associated expenses. Countercl. ¶ 8; Compl. at 5.

Morrison filed a motion to dismiss this case, arguing that collateral estoppel barred the action (Dkt. 3). Judge O'Meara agreed with Morrison and granted the motion (Dkt. 17). Watermark appealed. The Sixth Circuit found that the indemnification claim was precluded, because it depended on Watermark showing that the damages it sought were not the result of its

---

[1] The original agreement was between Morrison and Sunrise IV Franklin SL, LLC, Watermark's predecessor in interest. Resp. at 2.

[2] The counterclaim alleges that the case settled for $3.45 million, which is inconsistent with the complaint's allegation that the state case settled for $3.65 million. Because the actual amount is not relevant to the resolution of the present motion, the Court will refer to the $3.65 million amount for consistency.

own negligence – a proposition it could not establish, as the state court jury had found to the contrary. Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc., 905 F.3d 421, 430 (6th Cir. 2018). However, the Sixth Circuit held that the same preclusive effect did not apply to the breach of contract claim, because Watermark's negligence is not a defense to such an action. Id. at 431. The Sixth Circuit remanded the breach of contract claim and the matter was reassigned to the undersigned after Judge O'Meara's retirement. Morrison answered the complaint and filed a counterclaim for contractual indemnification (Dkt. 25). The present motion for judgment on the pleadings seeks dismissal of the breach of contract claim and a judgment for Morrison for its expenses and attorney fees in defending against the breach claim.

## II. STANDARD OF DECISION

Morrison moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. Any party may move for the entry of a judgment after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). Courts apply the same analysis to motions for a judgment on the pleadings under Rule 12(c) as is applied to applications for dismissal under Rule 12(b)(6). Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007). However, a court need not accept as true legal conclusions or unwarranted factual inferences. Id. at 581-582.

When evaluating a motion for a judgment on the pleadings, a court considers the complaint, the answer, and any written instrument attached as exhibits. Fed. R. Civ. P. 12(c). A court may also consider any undisputed facts. See Mills v. Barnard, 869 F.3d 473, 486 (6th Cir. 2017) (citing

<u>Stafford v. Jewelers Mut. Ins. Co.</u>, 554 F. App'x 360, 369-370 (6th Cir. 2014) (taking judicial notice of undisputed facts in documents considered by district court on ruling on Rule 12(c) motion)).

## III.    ANALYSIS

Morrison makes three arguments in support of its motion for judgment on the pleadings. First, it argues that Watermark sat on its rights for more than four years and, therefore, laches bars any recovery in this case.  Second, it argues that Watermark fails to state a breach of contract claim because the damages it seeks do not naturally arise from a contract breach.  Finally, Morrison argues that the Sixth Circuit has already found that Watermark was responsible for Henderson's death, which triggers Morrison's contractual right to indemnification.  The Court will take each argument in turn.

### A. Laches

Morrison argues that the doctrine of laches bars Watermark's breach of contract claim, because Watermark delayed bringing this action for more than four years.  Mot. at 7.  Laches is an affirmative defense that bars an action where there is an unexcused or unexplained delay in commencing the action resulting in prejudice to an opposing party.  <u>Pub. Health Dep't v. Rivergate Manor</u>, 550 N.W.2d 515, 520 (Mich. 1996).  Although the passage of time is important, "laches is not triggered by the passage of time alone."  <u>Knight v. Northpointe Bank</u>, 832 N.W.2d 439, 442 (Mich. Ct. App. 2013) (citation omitted).  "It is the prejudice occasioned by the delay that justifies the application of laches."  <u>Id.</u>  Generally, "'[w]here the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot . . . be recognized.'"  <u>Kuhn v. Sec'y of State</u>, 579 N.W.2d 101, 108 (Mich. Ct. App. 1998) (quoting <u>Lothian v. City of Detroit</u>, 324 N.W.2d 9, 14 (Mich. 1982)).

There is an interplay between laches and the statute of limitations. <u>Innovation Ventures, LLC v. Custom Nutrition Labs., LLC</u>, 912 F.3d 316, 343 (6th Cir. 2018). Under Michigan law, a claim filed within the statute of limitation gives rise to a rebuttable presumption that any delay in the filing of the complaint was reasonable. <u>Id.</u> When the presumption is rebutted, however, laches may bar a claim even where the applicable statute of limitations has not expired. <u>Tenneco Inc. v. Amerisure Mut. Ins. Co.</u>, 761 N.W.2d 846, 864 (Mich. Ct. App. 2008).

Here, Watermark filed its breach of contract claim against Morrison within the statute of limitations. Nonetheless, Morrison argues that laches should bar the claim because it is prejudiced by Watermark's decision to not implead it in the state case. Mot. at 10. It argues that the state jury could have allocated liability between Watermark and Morrison, but that opportunity is now lost. <u>Id.</u> Morrison makes much of the fact that Watermark made a calculated decision not to implead Watermark. <u>Id.</u> at 10-11. But Watermark may not have been the only party to make a calculated decision. In Michigan, a non-party can intervene in an action to protect its interests in the outcome of the case. <u>See</u> Mich. Ct. R. 2.209. Why Morrison did not or could not intervene is not clear from the pleadings.

Although Morrison's position may have materially changed because it may be subject to a multi-million-dollar exposure, its position may have improved in that the extent of its exposure may have been reduced by virtue of the settlement. In other words, Watermark's decision to delay suing Morrison may not have put Morrison in a worse position. However, the Court cannot make such a determination without some development of the record. Therefore, Morrison's motion with respect to laches is denied without prejudice.

**B. Failure to State a Claim as to Damages**

Morrison makes two arguments in support of its argument that Watermark has failed to state a claim for breach of contract.  First, it argues that the damages Watermark seeks, the $3.65 million settlement, are not available under Michigan law.  Second, it argues that the settlement is not the type of damages that naturally arise from a contract breach.  Mot. at 11.  Watermark appears to argue that Michigan law does allow it to recover the settlement amount and expenses from Morrison and that such damages flow from the alleged breach.  Resp. at 13-19.  Watermark has the better part of the argument.

In Michigan, contract damages are limited to those damages "that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." Kewin v. Mass. Mut. Life Ins. Co., 295 N.W.2d 50, 53 (Mich. 1980).  For a commercial contract, that generally means that damages are limited to the monetary value of the contract had the breaching party fully performed under it.  Id.  But there are exceptions.

For example, consequential damages are sometimes available and "may include litigation or settlement costs from prior litigation with a third-party where those costs were occasioned by a breach of contract."  Lansing Pavilion, L.L.C. v. Eastwood, L.L.C., No. 265970, 2006 WL 2271348, at *1 (Mich. Ct. App. Aug. 8, 2006).  "'The party in breach is liable for the amount of any judgment against the injured party together with his reasonable expenditures in the litigation, if the party in breach had reason to foresee such expenditures as the probable result of his breach at the time he made the contract.'"  Id. (quoting Restatement (Second) of Contracts § 351 (1981)); see also Madison Cnty. Const. Co., Inc. v. State, 31 N.Y.S. 2d 883, 884-885 (Ct. Cl. 1941) ("The theory of such cases seems to be that the defendant must be deemed to have contemplated that the breach of his contract with the plaintiff might subject the latter to damages in an action by a third

party, and, therefore, he is deemed in law to have impliedly agreed to become responsible therefor; or at least that such damages must be deemed to have been within his contemplation as naturally flowing from his own breach of contract.").

Morrison's first argument misses the mark. As noted above, Michigan courts allow the recovery of expenses, including settlements, from prior actions as damages in a subsequent breach of contract action. Morrison attempts to rely on a case that found otherwise, but such reliance is misplaced. Mot. at 12-13 (citing Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co., 961 F. Supp. 1078 (W.D. Mich. 1997)). In Ameriwood, the court granted summary judgment against a party asserting a breach of contract claim seeking settlement costs from a prior action because nothing in the record suggested that the parties contemplated any consequential damages. Ameriwood, 961 F. Supp. at 1087-1088 (citing Kewin, 295 N.W.2d at 53). But Ameriwood was decided on a motion for summary judgment based on a developed record. Ameriwood is not persuasive at this early stage of litigation before discovery has commenced and has no bearing on what recovery is potentially available under Michigan law.

Morrison's second argument that the settlement does not naturally arise from a contract breach is also unpersuasive. Morrison cites Restatement (Second) of Contracts § 351 (1981) for the proposition that "[l]oss may be foreseeable as a probable result of a breach because it follows from the breach . . . in the ordinary course of events. . . ." As noted above, this section also addresses when the recovery of litigation expenses, including settlements, by the party in breach are foreseeable. It offers the following example:

> A contracts to supply B with machinery for unloading cargo. A, in breach of contract, furnishes defective machinery, and C, an employee of B, is injured. C sues B and gets a judgment, which B pays. The amount of the judgment and B's reasonable expenditures in defending the action were foreseeable by A at the time the contract was made as a probable result of the breach.

Illustration 10 to Restatement (Second) of Contracts § 351 (1981).

Morrison argues that the sequence of events that led to Watermark settling a $5.08 million judgment was not foreseeable when its contract with Watermark was made. But Morrison focuses too narrowly on how the specific events giving rise to this case unfolded, instead of the bigger picture that when a party does not take ordinary care to fulfil its contractual duties through negligence, for example, dire consequences are foreseeable.

Here, Watermark contracted with Morrison to provide food and kitchen services to a retirement community. Watermark alleges that Morrison breached the contract by not using ordinary care in complying with its contractual obligations to maintain the kitchen in a reasonably safe manner. Specifically, Morrison employees allegedly did not properly secure toxic chemicals. The mishandling of the toxic chemicals allowed Henderson to access and ingest the toxic chemicals resulting in her death. Henderson's estate sued Watermark in state court and the case eventually resulted in a settlement. Like a lawsuit arising from the delivery of defective machine parts, a lawsuit arising from the mishandling of toxic chemicals is foreseeable in the ordinary course of events.

Accordingly, a lawsuit resulting in a settlement was foreseeable at the time the parties entered into their agreement and the type of damages that naturally arise from a contract breach. Accordingly, the Court cannot say that as a matter of law that Morrison is clearly entitled to judgment based on the pleadings.

### C. Indemnity and Attorney Fees

Finally, Morrison argues that the Sixth Circuit's ruling regarding Watermark's liability triggers Watermark's obligation to contractually indemnify Morrison. Mot. at 15. Morrison is mistaken.

The Sixth Circuit explained that Watermark's contractual-indemnification claim could not succeed because Morrison has no obligation to indemnify Watermark for its own negligence. <u>Watermark Senior Living</u>, 905 F.3d at 430. The agreement between the parties provides that Morrison must indemnify Watermark for damages arising "solely" from Morrison's conduct. Agreement, Ex. A to Mot., at Art. 6.3(a). However, because a state court jury found that Watermark was negligent, the Sixth Circuit ruled that Watermark is estopped from arguing that Morrison is "solely" responsible. <u>See</u> <u>Watermark Senior Living</u>, 905 F.3d at 430.

The Sixth Circuit's ruling does not, however, work in the other direction. The indemnification provision also requires Watermark to indemnify Morrison for any damages arising "solely" from Watermark's conduct. Agreement, Ex. A to Mot., at Art. 6.3(b). But neither the Sixth Circuit nor the state court jury found that Watermark was solely responsible for Henderson's death. The state court jury was not asked to determine whether Morrison had any level of responsibility in the matter. That issue is what is ultimately before this Court and it is not one that can be resolved on the pleadings.

## IV.   CONCLUSION

Because Morrison is not clearly entitled to judgment, its motion for judgment on the pleadings (Dkt. 28) is denied.

SO ORDERED.

Dated:  August 28, 2019                          s/Mark A. Goldsmith
     Detroit, Michigan                        MARK A. GOLDSMITH
                                     United States District Judge